226 So.2d 328

Johnny WILLCUTT, alias

v.

STATE of Alabama.

6 Div. 663.

Supreme Court of Alabama.

Sept. 4, 1969.

Sherman B. Powell, of Powell & Powell, Decatur, for appellant.

548

MacDonald Gallion, Atty. Gen., and Robt. E. Morrow, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant was indicted and convicted of robbery and was sentenced in accordance with the punishment fixed in the verdict of life imprisonment in the penitentiary. His motion for a new trial was overruled.

Appellant contends in brief that the evidence was insufficient to support a conviction, was insufficient to prove venue, and that the trial court erred in overruling the motion for a new trial.

At the trial, the State's chief witness, James Harvell, a construction worker in Hartselle, Alabama, testified that during the week preceding April 17, 1965, he received a letter postmarked in Birmingham from a former Hartselle girlfriend. The letter asked Harvell to meet her in Bir-

mingham on Saturday, April 17, at the Greyhound bus station.

Harvell stated that he went to the Birmingham bus station on that day and waited. About 6:30 p. m., Harvell said the defendant approached him in the station and told him that the woman for whom he was waiting would not be able to come. The defendant invited Harvell to go with him into the country to look at a squirrel dog that was for sale. Harvell testified that he had never met the defendant before but knew that he was from Hartselle, had seen him on various occasions and knew his name.

The witness then went with defendant in a pickup truck, along with two other men who were with defendant, towards Leeds, Alabama. On the way, Harvell said the defendant pulled out a knife once but soon put it away. He stated that after they had driven for an undetermined distance, the driver pulled the truck onto a dirt road and went about a mile down this road and stopped. Then, he said, they all got out, defendant demanded Harvell's money and the witness gave defendant about $50.00. One of the men then hit him in the head from behind with something that looked like a pipe, knocking Harvell to the ground. The witness said that one of the men poured gasoline on him and someone threw a lighted match on him and the three men left.

The witness said he was badly burned above the waist before he could get his shirt off. He said he wandered around in the woods in circles, always returning to the scene of the crime, until he finally sat down, prayed, and then got up and walked a short distance to a highway where he was picked up by a motorist who took him to a hospital.

When the State rested, defendant moved to strike the State's evidence on the ground that venue had not been proven. The motion was denied.

The defendant then sought to prove an alibi by presenting witnesses who stated that defendant had moved to Indiana several months before the date of the crime and who said that they saw him in LaPort County, Indiana, on April 16 and 17, 1965. Defendant's brother, a resident of LaPort County, stated that defendant had moved there about nine months before the date of the crime, that he had seen his brother several times a week since that time and that defendant had not returned to Alabama since August, 1965, until he was arrested in Indiana. He stated that he took his brother to the county welfare office on April 16, 1965, and saw the defendant working in Mr. Harrield Teague's yard on Saturday, April 17, and that he saw the defendant again at Mr. Teague's house on April 18.

Two other witnesses, Harrield Teague, defendant's landlord in Indiana, and Mrs. Virginia Weiler, a clerk in the Michigan City, Indiana, welfare agency office, also placed the defendant in Indiana on or near the date of the crime, but Mrs. Weiler admitted on cross examination that she could not be positive that defendant was the man who came into her office on April 14 and 20, but she said the defendant looked very similar to the person in her office on those dates.

■ The scintilla rule does not apply in criminal cases. There must be substantial evidence tending to prove all the elements of the charge. Ex parte Grimmett, 228 Ala. 1, 152 So. 263. The burden is on the State to prove beyond a reasonable doubt that the crime has been committed and that the defendant was the person who committed it. Jarrell v. State, 251 Ala. 50, 36 So.2d 336. The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. Byrd v. State, 213 Ala. 333, 104 So. 830.

■ We cannot say in the instant case that there was not enough evidence to allow the jury to draw the inference that the defendant was the person who committed this

robbery. The defendant presented a strong case in support of his alibi. The testimony of his witnesses was in direct conflict with the testimony of the State's witness. Yet the State's witness made a positive identification of defendant as the person who robbed and burned him. The State presented substantial evidence and the jury had before it an adequate basis for drawing inferences and conclusions against the defendant. It is for the jury, not the trial court or this court, to find the facts and to determine guilt or innocence. The State presented sufficient evidence upon which the jury could base its verdict.

■ The appellant argues that the State did not prove in what county the offense occurred and, therefore, did not prove venue. The State must prove venue. Tit. 15, § 238, Code 1940. Failure to prove venue is a ground for reversal. Kimbell v. State, 165 Ala. 118, 51 So. 16; King v. State, 16 Ala.App. 341, 77 So. 935. Venue lies in the county where the offense was committed. Tit. 15, § 91, Code 1940. However, where the offense is committed on the boundary of two or more counties, or within a quarter of a mile thereof, or when it is committed so near the boundary of two counties as to render it doubtful in which the offense was committed, the jurisdiction is in either county. Tit. 15, § 95, Code 1940.

· While proof of venue is essential to a conviction, it, like any other fact in the case, may be established by circumstantial evidence; and when the State offers evidence tending to show that the crime was committed within the jurisdiction of the court, the question becomes one for the jury. Denton v. State, 263 Ala. 311, 82 So. 2d 406.

■ The State presented testimony from the motorist, who lived in Acmar, near Leeds, and commuted to work in Birmingham and back every day, that he picked the victim up sometime after 3:00 a. m. Sunday, April 18, 1965, about three-quarters of a mile within the Jefferson County line near two railroad overpasses. The State also presented testimony from a detective, with the City of Birmingham who investigated the crime, who said that these overpasses were one-half mile within Jefferson County.

Defendant points out that the victim stated that he began trying to get out of the woods about 8:00 or 8:30 p. m. He couples this testimony with the motorist's testimony and says that the State has only placed the victim in Jefferson County several hours after the crime was committed. Appellant argues that the victim wandered for several hours and could easily have come from another county into Jefferson.

The State responds to this argument by pointing to the victim's testimony that he kept walking in circles, always coming back to the scene of the crime and to his statement that just before finding the highway, he sat down at the scene of the crime, prayed and then got up and walked to the highway. Thus, says the State, there is evidence from which a jury could reasonably infer proper venue. This was the basis given by the trial court for denying defendant's motion to exclude the evidence.

We agree with the trial court that the facts presented by the State do present a jury question as to the location of the scene of the crime. The court instructed the jury on venue. The testimony of the victim, the motorist and the detective provide sufficient evidence from which the jury could determine that the crime occurred either in Jefferson County or within one-quarter of a mile of Jefferson County.

Appellant's third contention is that his motion for a new trial on the grounds that the verdict was contrary to and against the great weight of the evidence was improperly overruled. The standard to be followed by appellate courts when such a claim is made was established long ago, when this court said that a trial court should not be reversed on the ground that the verdict is contrary to the evidence "unless, after allowing all reasonable presumptions of its correctness, the preponderance

of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738; Caldwell v. State, 203 Ala. 412, 84 So. 272; Washington v. State, 274 Ala. 386, 148 So.2d 206.

The evidence in this case of the defendant's alibi is not so convincing and overwhelming that we are clearly convinced that the decisions of the jury and trial court are wrong and unjust. The evidence is in sharp conflict. But the resolution of such a conflict is for the jury.

■ Appellant's next contention, raised in his motion for a new trial, is that the State's witness, James Harvell, gave testimony at the first trial of this case, which resulted in a mistrial, at variance with, and in some instances contrary to, the testimony he gave at the second trial. The discrepancies were not gross or extreme, and went merely to the details of his story. The trial court, at the hearing on the motion for a new trial, expressed some doubt as to the propriety of this contention and indicated that it would probably treat any variances and differences in Harvell's testimony as going only to the weight of the evidence.

We are clear to the conclusion that the discrepancies in the testimony went only to the weight and credibility of the witness. We illustrate by giving some examples:

a. At the first trial, he said Willcutt choked him to make him take a drink and, at the second trial, he said one of the other men choked him.

b. At the first trial, he said he had around $50.00 with him when he was robbed and, at the second trial, he said he had about $55.00.

c. At the first trial, he said he had known Gladys Linley about 10 years and, at the second trial, he said he had known her 7 or 8 years.

d. At the first trial, he said he planned to carry the dog he was considering buying home with him and later said he would not have done so.

Mindful of our duty is such cases, we have found no reversible error in the record, whether argued in brief or not.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.