270 So.2d 831

**Jewell Fay WALL**

v.

**STATE.**

**7 Div. 154.**

Court of Criminal Appeals of Alabama.

Nov. 14, 1972.

Rehearing Denied Dec. 5, 1972.

Burns, Carr & Shumaker, Centre, for appellant.

William J. Baxley, Atty. Gen., and Sarah V. Maddox, Asst. Atty. Gen., for the State.

W. J. HARALSON, Supernumerary Circuit Judge.

The appellant was charged with murder in the first degree, tried and found guilty of murder in the second degree, and sentenced to ten years imprisonment in the penitentiary.

The State's testimony tended to show that at approximately two-fifteen on the morning of May 9, 1971, the appellant appeared at the home of Mary Katherine Twilley, the mother of her husband, and stated, "Ronnie may need your help. I just shot him," referring to her husband Ronnie Wall, the deceased. The appellant had a rifle in her hand at the time. The Twilley home was about five hundred feet from the home of appellant. Mrs. Twilley immediately went to the appellant's home where she found her son lying across a bed, appearing to have been shot in the side. She immediately left to get her automobile to transport him to the Cherokee County Hospital where she and her husband did take him and where he died shortly thereafter. It appears that he died from a gunshot wound fired from a .22 caliber rifle. Mr. Twilley, the husband of Mrs. Katherine Twilley, upon hearing of the incident, dressed and, on his way to appellant's home, met her and took from her a loaded .22 caliber rifle which appears to have been offered in evidence along with a spent bullet and cartridge shell. State Toxicologist Van Pruitt testified that death occurred as the result of the bullet wound and that the bullet offered in evidence was taken from the body of the deceased upon an autopsy by Mr. Pruitt. The empty cartridge shell was found by Mr. Twilley in the room of appellant's house where the wounded man was found and lying near him.

It further appears that the appellant along with her husband had attended a party at the home of Mr. and Mrs. Earl Hicks on the evening and night before the shooting and that there were several guests present at the party. All appeared to have been drinking beer or whiskey to some extent except Mrs. Hicks. It also appears that the appellant drank more than some of the other guests and at one time became drunk and sick and had to lie down in one of the bedrooms where she slept for awhile before waking. It was further testified that she threatened to kill the deceased at one time during the night; that at another time she threatened to cut him into little pieces; and that two of the male guests at the party forcibly took a knife from her on one occasion. Sometime after midnight she and her husband were taken home by some of the guests and there appeared to be no trouble between them at this time. It was the last time they were seen by any of the witnesses until the appellant appeared at the home of Mrs. Twilley.

The appellant sought to defend under the doctrine of self-defense. She testified in substance that after reaching home from the party her husband became abusive, came into the bedroom where she was attempting to put her child to bed, and slapped her around. She further stated that he was drinking; that she ran into the living room next to the bedroom and the deceased followed her and said, "I am going to kill you, damn you;" that she obtained a rifle from behind the television and fired it after he kept coming toward her as she was telling him to stay away; that he grabbed his stomach and turned and fell across the bed; and that she did not think he was hurt but when he did not get up she went to Mary Twilley's house and made the statement testified to by Mrs. Twilley.

She further stated that she had attended the party as testified to by the State's witnesses but she had not become drunk although she and the other guests did drink some from time to time. She denied making threats against the deceased and denied that she was drinking more than the other guests.

After Mr. and Mrs. Twilley left with the deceased, the appellant with her child called her father who resides in Rome, Georgia, and he came and took her home with him. The next afternoon he brought her back and she surrendered to the Sheriff of Cherokee County. She further testified that there were black and blue places on her neck and one of her eyes was black from the blows she had received from the deceased on the night of the shooting.

■ At the conclusion of the testimony offered by the State, the appellant moved that it be excluded and the motion was overruled by the court. There was no error in the action of the court since the State's evidence made a prima facie case upon which a conviction could be based, if believed under the required rule.

■ In brief, the appellant argues that venue of the shooting was not proven by the State. The State's testimony does show that both houses where appellant and deceased lived at the time of the killing and the Twilley house were in Cherokee County. The shooting occurred in appellant's home. Venue may be proven by the State by circumstantial as well as direct evidence.

■ As to the place of the actual shooting, the location of the house was established to be in Cherokee County by the State although no State witness actually saw the shooting. We think the question of venue in this case was a question for the jury to decide. Wilcutt v. State, 284 Ala. 547, 226 So.2d 328; Denton v. State, 263 Ala. 311, 82 So.2d 406.

■ Further, it appears that this matter should have been raised by a requested written charge rather than by a motion to exclude the evidence. Denton, supra. The appellant further argues in brief that since the only evidence of self-defense was offered by her, she being the only witness to the conflict, and where there was evidence containing the elements of self-defense applicable to the case at bar, she was entitled to a directed verdict and that the court should not have allowed the case to go to the jury.

The elements of self-defense briefly stated are, to-wit: (1) that the defendant must be free from fault in bringing on the difficulty and (2) that there must be a present impending peril to life or danger of great bodily harm, either real or so apparent as to impress on the mind of a reasonable person a reasonable belief of an existing necessity to take life, and the defendant must so believe. The third element of escape does not apply in the case at bar since the appellant was at the time of the shooting in her home.

■■ There is no burden of proof on the appellant to prove self-defense but if she offers testimony of the elements of self-defense which taken with the other evidence raises a reasonable doubt in the

minds of the jury as to her guilt, she is entitled to an acquittal. In determining this question the jury is entitled to look at all the testimony offered by the State and the defendant. And even though the evidence of defendant with regard to the elements of self-defense may have been without dispute, its credibility was for the jury. They were not bound to accept it as true and to draw any inference of imminent danger or freedom from fault in bringing on the difficulty. In their discretion they had a right to reject it as they apparently did in the case at bar. Cooley v. State, 233 Ala. 407, 171 So. 725; Kemp v. State, 278 Ala. 637, 179 So.2d 762.

In this case the testimony for the State tends to show threats on the part of the defendant and the use of a deadly weapon in the shooting along with the balance of the circumstances testified to by State's witnesses.

■ We think it was a question for the jury to determine whether the appellant acted in self-defense and that this question was properly submitted in the oral charge of the court.

There were few objections to the testimony by either the State or the appellant. We have carefully reviewed the record in this regard and find no error on the part of the court.

■ The court refused five written charges requested by the appellant. Charges 1 and 2 are affirmative in nature and were properly refused. Charges 7 and 10 were covered in the oral charge of the court and, hence, there was no error in their refusal. Charge 9 is not apt in this case, being abstract and not being based on any evidence, and was properly refused by the court.

The issues in this case were very thoroughly and explicitly covered by the court in its oral charge, including the principles sought to be set out in some of the refused charges.

■ As stated above, a careful review of the record reveals few objections to testimony either by the State or the defendant and we are of the opinion that the court allowed and did not restrict the defendant in his right to a thorough and sifting examination as guaranteed by the statute.

The foregoing opinion was prepared by Honorable W. J. HARALSON, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended. His opinion is hereby adopted as that of the Court.

We have found no error of a reversible nature in the record and therefore this cause is due to be and is affirmed.

Affirmed.

All the Judges concur.