HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at 10 years imprisonment in the penitentiary. At arraignment, attended by counsel, he pleaded not guilty. After sentence was imposed, he gave notice of appeal. He was furnished a free transcript and trial counsel was appointed to represent him on appeal.
The evidence is undisputed that about 8 o’clock on the night of October 1, 1974, two men entered Mallett’s Coliseum Pharmacy and robbed the owner and his employee at gunpoint. One of the robbers was armed with a shotgun and the other bandit had a pistol. Mr. Mallett and his employee, David Erickson, were ordered to lie on the floor and their hands and feet were tied. While they were tied, the robbers took each of their wallets. Both robbers were wearing ski masks and neither Mallett nor Erickson was able to identify ' them. While both men were on the floor, the robbers filled a canvas bag with hard drugs from the prescription department and went out the door to a waiting car to make good their escape. Erickson stated he had $140.00 in his wallet.
Appellant did not testify but offered the testimony of witnesses to prove his claimed alibi.
Mr. Mallett testified that all drugstores are given a number to dispense all controlled drugs and no stores have the same number. He stated his number was AMO476-603. He further testified that some weeks after the robbery Detective J. D. Foster brought a sack of drugs to see if he could identify them. He stated there was one bottle that had his number— AMO476-603 — stamped on it and this bottle contained Coricidin with codeine in it. He saw a number of other bottles but the numbers had been scraped off and this was the only bottle that he could positively identify as being taken from his drugstore on the night of the robbery.
Teresa Wickham drove to Mallett’s Pharmacy on the night of the robbery to make a purchase for her mother. She was accompanied by her sister, Jackie Wick-ham. The time was about 8 o’clock on the night of October 1, 1974. Teresa parked in front of the drugstore and noticed a man sitting in a light blue car about four parking spaces from her but this car was parked at an angle in front of the store. The place outside the drugstore was well lighted, so well lighted that a person could sit in a car and read a newspaper. The man in the car was not disguised and she got a good look at him in the face before she entered the drugstore. Once inside the *407 store she saw two men wearing ski masks behind the counter and realized a robbery was in progress. She acted as if nothing was happening and waited for the men to leave. After the men left, she returned to her car and went home and reported the robbery to her mother who called the police department.
A short time after the robbery she was shown individual photographs at police headquarters and viewed a lineup. At the lineup she identified the man in the car as Arnold Jones. After looking at mug books several times, she identified a mug shot of Arnold Jones.
Jackie Wickham testified that while waiting in the car for her sister to return, she observed the man parked at an angle in front of the drugstore and this man kept staring at her. She could not understand why this man kept staring at her and she kept looking at him and got a full view of his face. She later identified this man at a police lineup. She saw appellant and another white male come out of the drugstore and as they were coming out the door, they were pulling off their ski masks. One was carrying a canvas bag from which drugs were spilling. The men got in the waiting car and sped from the scene. After the men pulled off their ski masks, she got a good look at both men. On December 6, 1974, after viewing a lineup which did not include appellant, she was shown a mug book and positively identified appellant as one of the robbers. She also made a positive in-court identification of appellant as one of the two men who robbed the drugstore on October 1, 1974.
Detective J. D. Foster showed Jackie the mug books and after she identified appellant on December 6, 1974, he procured a warrant for appellant’s arrest. The officers went to appellant’s house to serve the arrest warrant but they were unable to locate him. They made several trips to his home and his wife told them she did not know where he was. Acting on a tip Foster and Detective Lynch went to a house trailer in the Central Community of Elmore County on December 20, 1974, and arrested appellant. A female named Dorma was at the trailer with appellant when the officers arrived.
Immediately after placing appellant under arrest, the officers went to a pond behind the trailer and found a bag under some straw which contained several bottles. The officers carried the bag to Mr. Mallett and upon examining the bottles he found one bottle that had the number of his drugstore — AMO476-603—on it. Also on this bottle were the initials, “MCP,” which Mr. Mallett testified denoted his drugstore— Mallett’s Coliseum Pharmacy. This bottle was introduced into evidence.
Following the presentation of the above evidence the State rested and appellant moved to exclude the State’s evidence on the ground the State had failed to prove a prima facie case. This motion was overruled and denied.
As above stated appellant did not testify. The crux of his defense was an alibi. A Mrs. Laura Faye Miller and her eleven-year-old son testified they were with appellant from 5:30 p. m. to 10:00 p. m. on the night of October 1, 1974, thus making it impossible for him to have committed the robbery at 8:00 p. m. on that date.
Mrs. Miller further testified that she was married to a railroad man and that he was out of town on October 1, 1974. That she was a good friend of appellant though she had never met his wife. She stated appellant called her from a store on the Mobile road to come pick him up. She carried her two children to the home of a baby-sitter and picked up appellant at 5:30 p. m. That they rode around for a while and went to the Downtown Club and other places and then she picked up her children and they all went to her home. That at 10:00 p. m., she drove appellant to a truck stop on the Southern Bypass where he got in a car with a girl named Dorma. That the last time she saw appellant was early *408 in December, 1974, and she did not know the officers were looking for him.
Alibi testimony, like all other conflicting evidence in a criminal prosecution, is an issue to be determined by the jury. The jury resolved this issue against appellant. Brown v. State, 229 Ala. 58, 155 So. 358; Gillis v. State, 242 Ala. 550, 7 So.2d 563; Mosley v. State, 54 Ala.App. 59, 304 So.2d 613.
In Willcutt v. State, 284 Ala. 547, 226 So.2d 328, 330, the Supreme Court said:
“The scintilla rule does not apply in criminal cases. There must be substantial evidence tending to prove all the elements of the charge. Ex parte Grimmett, 228 Ala. 1, 152 So. 263. The burden is on the State to prove beyond a reasonable doubt that the crime has been committed and that the defendant was the person who committed it. Jarrell v. State, 251 Ala. 50, 36 So.2d 336. The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. Byrd v. State, 213 Ala. 333, 104 So. 830.
“We cannot say in the instant case that there was not enough evidence to allow the jury to draw the inference that the defendant was the person who committed this robbery. The defendant presented a strong case in support of his alibi. The testimony of his witnesses was in direct conflict with the testimony of the State’s witness. Yet the State’s witness made a positive identification of defendant as the person who robbed and burned him. The State presented substantial evidence and the jury had before it an adequate basis for drawing inferences and conclusions against the defendant. It is for the jury, not the trial court or this court, to find the facts and to determine guilt or innocence. The State presented sufficient evidence upon which the jury could base its verdict.”
In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Court held:
“Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method’s potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misiden-tification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, [18 L.Ed.2d 1199], and with decisions of other courts on the question of identification by photograph.”
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur, except CATES, P. J., not sitting.