James Leroy Logue was convicted of two counts of first degree rape and of intimidating a witness. He was sentenced as a habitual offender to three terms of life imprisonment. Four issues are raised on this appeal from those convictions.
 I
The defendant argues that he could not be convicted of the crime of intimidating a witness because he had no reason to believe that his daughter, LaDonna, would be a witness against him.
The defendant was charged with raping both of his daughters. The indictment was returned in 1985. Both of the daughters, LaDonna and Jucretia, were listed as witnesses on the indictment. In 1987, the defendant was indicted for attempting to influence LaDonna's testimony in the rape case.
LaDonna testified that in late 1986 she got a subpoena to come to court and that she told the defendant she "was going to run off." According to LaDonna, the defendant replied that, "we had to check it out and make sure that he would not get in trouble about it." After talking with defense counsel, LaDonna went to the assistant district attorney who told her that "it would be okay for [her] not to testify" and for her to go to Louisiana. Before she left, the defendant "asked [her] not to testify, to tell them I lied." LaDonna testified, "He said if it came to court and my sister testified and they won, that it wouldn't be by his hands but Jucretia and my mother would die."
When LaDonna returned from Louisiana, the defendant said "basically the same thing": "[I]f he went to jail and he got prosecuted that it wouldn't have to be by his hands but my mother and Jucretia *Page 1066 
would die." LaDonna testified that she told the defendant she was "out of this case."
"A person commits the crime of intimidating a witness if he attempts, by use of a threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to: (1) Corruptly influence the testimony of that person." Alabama Code 1975, § 13A-10-123(a)(1).
 "Section 13A-10-123 may change Alabama law to the extent that actual knowledge that the person sought to be bribed is about to be called as a witness is no longer required. . . . Under the Criminal Code, defendant need only have believed that the person sought to be bribed would be called." § 13A-10-123 Commentary (emphasis in original). (Citations omitted).
Section 13A-10-123(b) provides: " 'Threat,' as used in this section, means any threat proscribed by section 13A-6-25 on criminal coercion." Section 13A-6-25(a) condemns legally unauthorized "threat[s] to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act."
We agree with the defendant that the crime of intimidating a witness has not been committed if, at the time the threat was made, the accused had no reason to believe and did not believe that the person sought to be influenced was about to be called as a witness in an official proceeding. See State v. Pella,25 Wn. App. 795, 612 P.2d 8 (1980). In his oral instructions, the trial judge correctly charged the jury that in order to convict the defendant of intimidating a witness, that they must find, among other things, "that at the time of the threat he knew her to be a witness or believed she would be a witness in the case."
The trial judge denied the defendant's motion for a judgment of acquittal made at the close of the State's case because LaDonna was "listed as the prosecuting witness." She was named as the victim in count two of the indictment charging rape and her name and address appear under the heading "witnesses" on the indictment.
In this case, there is evidence that LaDonna attempted to make the defendant believe that she was not going to testify, that she was "out" of the case, and that an assistant district attorney had told her that "it would be okay for [her] not to testify." The defendant testified that he thought LaDonna's case had been dismissed.
Despite this evidence, the issue was properly submitted to the jury. Even though LaDonna told the defendant she was out of the case, she was still named as a victim in one count of the indictment. Additionally, the defendant had reason to believe that the State was still interested in her testimony because "they" wanted her to take a lie detector test.
"The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone." Willcutt v. State, 284 Ala. 547, 549,226 So.2d 328, 330 (1969). In reviewing a conviction based on circumstantial evidence, "[t]he test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilty, but whether a jury might reasonably so conclude." Cumbo v. State,368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, Ex parteCumbo, 368 So.2d 877 (Ala. 1979). See also Ex parte Mauricio,523 So.2d 87 (Ala. 1987). "It is not necessary for a conviction that the defendant be proved guilty to the 'exclusion of every possibility of innocence.' " Burks v. State, 117 Ala. 148,23 So. 530 (1898). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781,2788, 61 L.Ed.2d 560 (1979). *Page 1067 
 "But this inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Woodby v. INS, 385 U.S., [276] at 282, 87 S.Ct. [483], at 486 [17 L.Ed.2d 362] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana, 406 U.S. [356], at 362, 92 S.Ct. [1620], at 1624-1625 [32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." Jackson, 443 U.S. at 319-20, 99 S.Ct. at 2789. (Emphasis in original).
 II
In proving the State's case of intimidating a witness, LaDonna testified that she told the defendant that the police were forcing her to take a lie detector test. On redirect examination, the following occurred:
 "Q. [Prosecutor] Okay. Now, you were asked about the things that you said to [the defendant] as far as being told that you had to take a polygraph and that sort of thing. Did anyone tell you that you had to take a polygraph?
"A. No one told me I had to.
"Q. Did you, though?
"A. Yes.
"Q. Okay. And what were the results?
"MR. SOGOL (Defense Counsel): I object.
"THE COURT: I sustain. Sir.
"MR. SOGOL: I object and move for a mistrial.
 "THE COURT: Denied and sustained as to the objection."
Defense counsel then approached the bench and argued his motion for a mistrial, which was again denied by the trial court.
The trial court properly sustained the defendant's objection and denied his motion for a mistrial:
 "[R]esults of lie detector tests are not admissible in evidence. However, our attention is not called to any authority in which it is held that the injection into evidence of the results of lie detector tests requires or justifies a mistrial. We do not condone the injection of the matter into the case by the State, but we are not convinced that error prejudicial to defendant resulted from the court's denial of defendant's motion for mistrial." Jones v. State, 439 So.2d 776, 781 (Ala.Cr.App. 1983).
 III
The defendant's prosecution was not barred by a three-year statute of limitations. In 1982, the time of the rapes, there was no statute of limitations for the offense of rape. Ex parteBeverly, 497 So.2d 519, 529 (Ala. 1986).
 IV
In an effort to obtain evidence against the defendant on the charge of intimidating a witness, the police, with LaDonna's assistance, tape-recorded a conversation between LaDonna and the defendant. That conversation was properly admitted into evidence.
In Voudrie v. State, 387 So.2d 248, 256 (Ala.Cr.App.), cert. denied, Ex parte Voudrie, 387 So.2d 256 (Ala. 1980), this Court held:
 "[S]ound recordings are admissible providing a proper foundation is laid for their admission. The rules for testing the admissibility of recordings have been outlined as follows:
 " '(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment *Page 1068 
of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.' 58 A.L.R.2d at 1027-8."
See also C. Gamble, McElroy's Alabama Evidence § 123.02 (3d ed. 1977).
 "The following are the most frequently stated elements that must be shown in order to lay a proper foundation for the admission of such recordings:
 "(1) authentication either by the person who made the recording or who can testify to its accurate reproduction of the relevant sounds,
 "(2) testimony that the recording is without any changes,
 "(3) testimony that the recording has never been out of the possession of the person in charge of same,
 "(4) testimony as to the accuracy of the machine which made the recording, and
 "(5) testimony identifying the voices recorded."
The purpose of laying a proper foundation for the admission of a tape recording is to show that the conversation or statement was accurately recorded and preserved. "In general, where the accuracy of the machine in producing the recording, and the accuracy of the recording being established, together with a showing as to the voluntary character of the statement, there can be no question as to the admissibility of a recorded statement, insofar as the statement is material to the issues of a case." Wright v. State, 38 Ala. App. 64, 70-71,79 So.2d 66, 71 (1954), cert. denied, 262 Ala. 420, 79 So.2d 74 (1955).
Here, the sound recording was of a conversation between the defendant and his daughter, LaDonna, in a small restaurant. LaDonna was wearing a "body microphone" and investigator John Faile with the Youth Aid Division of the Tuscaloosa Police Department was tape-recording the conversation. LaDonna testified that she had listened to the recording "right after it was played" and "it was my voice and it was his voice and the conversation was the same. . . . It's very accurate."
Investigator Faile testified that he taped the conversation. He monitored the conversation as it occurred and identified the voices on the tape. Later he listened to the tape and testified that it "accurately portray[ed] what was broadcast over that body microphone." He stated that he had "maintained constant custody and control over that tape since it was made until" the date of trial and that it was in the "same condition as it was then." Faile also testified that he tested his equipment and that it was "working properly."
Considering the testimony set out above, we find no reversible error in the admission of the tape recording even though portions of the proper foundation or predicate for its admission were proven after the recording had already been introduced into evidence. "If evidence is admitted without required preliminary proof, if followed by such proof or predicate, the error is cured." Lockett v. State, 218 Ala. 40,43, 117 So. 457 (1928). See also McElroy's at § 200.02(3) ("Where it is necessary to lay a formal predicate, but the confession is erroneously admitted before the predicate is laid, the error will ordinarily be cured by subsequent proof that the confession was not improperly induced.").
Although the prosecution did not elicit any specific testimony that the conversation was voluntary, the very circumstances surrounding the conversation sufficiently demonstrate this portion of the predicate. McElroy's at § 200.02(4)(a) ("When the circumstances indicate that, according to the common probabilities of experience, the confession was not improperly induced, then no formal predicate is required."). A tape recording of a conversation with a statement of the defendant can be offered in evidence without showing the voluntary character of the statement unless the conversation contains a confession. Lindsay v. State,41 Ala. App. 85, 93, 125 So.2d 716, *Page 1069 
723, cert. stricken, 271 Ala. 549, 125 So.2d 725 (1960).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.