Hugh Anthony Cowan was convicted of the capital murder of Felicia McCall, pursuant to Ala. Code 1975, § 13A-5-40(a)(2). He was sentenced to life imprisonment without the possibility of parole and was ordered to pay $5,617.11 in restitution and $500 to the Crime Victims' Compensation Fund. Cowan raises five issues on this appeal from that conviction.
 I.
The appellant argues that he was not competent to stand trial.
The appellant was arrested on May 26, 1987. He was transported to the Taylor Hardin Secure Medical Facility on July 14, 1987, and was returned to the Montgomery County Jail on October 2, 1987. The appellant was indicted in August 1987. On April 5, 1988, after an evidentiary hearing, the trial court found the appellant incompetent to stand trial and ordered him transferred to the Taylor Hardin Secure Medical Facility for evaluation and treatment. The appellant was returned to the county jail on August 4, 1988. On December 20, 1988, and April 19, 1989, the appellant was evaluated at the Secure Medical Facility as an outpatient.
On May 17, 1989, a jury was empaneled under the provisions of Ala. Code 1975, § 15-16-21, to determine the issue of the appellant's competency to stand trial. Because the appellant had previously been adjudged incompetent to stand trial, the trial court placed the burden on the State to prove that the appellant was competent. The trial court specifically instructed the jury that "in this case the burden is on the State to prove by the greater weight of the credible evidence that [the appellant], one, has a present ability to consult with his attorneys with a reasonable degree of understanding. And two, that he has a rational as well as a factual understanding of the proceedings against him on the charge of capital murder."[1] Upon directly conflicting and highly contested evidence, the jury found the appellant competent to stand trial. The appellant's trial on the indictment began on June 12, 1989, and a verdict was returned on June 16, 1989.
In this case, it is undisputed that the defendant has some type of a mental problem or problems. In his sentencing order the trial court found the presence of two mitigating factors:
 "The Court finds that the capital offense was committed while Cowan was under the influence of extreme mental or emotional disturbance. The evidence regarding Cowan's mental state at the time of the offense was sharply disputed, and Cowan failed to carry his burden of proving *Page 15 
that at the time of the offense that as a result of mental disease or defect he lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. However, there is ample testimony, mental health records and physical evidence to support a finding of Cowan's abnormal mental history and that at the time of the homicide he was under the influence of extreme mental disturbance.
". . . .
 "The Court finds that Cowan's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
 "The Court bases this finding on the same grounds that it bases its finding that Cowan acted under the influence of extreme mental or emotional disturbance."
However, " '[t]he test for determining competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against im." ' " Reesev. State, 549 So.2d 148, 150 (Ala.Cr.App. 1989).
 "The question of defendant's competency to stand trial is limited to his mental abilities at the time of trial. Thus, the fact that defendant may have been insane when he committed the act charged is not the test for present incompetency to stand trial, and where it affirmatively appears that defendant is presently sane and competent to stand trial, notwithstanding the fact that he may have been insane when he committed the act charged, there is no barrier to proceeding with the trial.
 "A distinction must be made between mental illness and metal incompetency to stand trial, and the fact that a defendant is mentally ill does not necessarily mean that he is legally incompetent to stand trial. Thus, not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence of defendant's mental unfitness must indicate a present inability to assist counsel or understand the charges.
 "Furthermore, the commission of a seemingly irrational crime does not per se render a defendant incompetent to stand trial. . . . Likewise, a general inability to communicate is not equated with incompetency to stand trial. . . . "
22A C.J.S. Criminal Law § 550 (1989) (footnotes omitted).
At the competency hearing, the State presented the testimony of a psychiatrist and a forensic psychologist that the appellant was competent to stand trial. In addition, there was testimony presented through these witnesses that other mental health experts at the Taylor Hardin Secure Medical Facility who were on the "Lunacy Commission" agreed with the determination of competency. Furthermore, the State presented evidence that the appellant may have been fabricating and exaggerating his symptoms. The appellant presented the expert testimony of psychiatrist Dr. Claude L. Brown and lay testimony, including that of the appellant's two attorneys, supporting a finding that he was incompetent to stand trial.
In this case, the verdict of the jury that the appellant was competent to stand trial is not so contrary to the "sharply disputed" evidence that this Court can find that the verdict of the jury was wrong or unjust. Thompson v. State,384 So.2d 1131, 1133 (Ala.Cr.App. 1979), cert. denied, 384 So.2d 1135
(Ala. 1980). Cf. Eathorne v. State, 448 So.2d 445, 449
(Ala.Cr.App. 1984) (affirming trial court's finding of competency made on the basis of conflicting evidence). While the State did present a prima facie case that the appellant was competent to stand trial, the defense presented testimony which, if believed by the jury, would support a verdict finding the appellant incompetent. The question of the appellant's competency to stand trial depended almost entirely upon the credibility of the expert witnesses. "The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one *Page 16 
rational conclusion, are for the jury alone." Willcutt v.State, 284 Ala. 547, 549, 226 So.2d 328, 330 (1969). "It was not for the court to determine what weight the jury should give to this evidence, as they are made the exclusive judges of its credibility." Reeves v. State, 186 Ala. 14, 21, 65 So. 160, 162
(1914). "A verdict on conflicting evidence is conclusive on appeal." Granger v. State, 473 So.2d 1137, 1139
(Ala.Cr.App. 1985). A verdict on conflicting evidence is conclusive and cannot be reviewed on appeal. See Roberson v.State, 162 Ala. 30, 32, 50 So. 345, 346 (1909). "A multitude of cases could be cited in support of the proposition that where there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense." Fuller v. State, 269 Ala. 312,333, 113 So.2d 153, 172 (1959), cert. denied, 361 U.S. 936,80 S.Ct. 380, 4 L.Ed.2d 358 (1960).
In finding that the jury's verdict of competent to stand trial is due to be upheld, this Court has considered the entire record presented on appeal. Immediately before trial on the indictment, the appellant made a pro se request to be tried without a jury. After questioning the appellant, the trial court denied that motion finding that the appellant could not knowingly, voluntarily, and intelligently waive the right to jury trial. When defense counsel renewed the motion for a reconsideration of the competency issue, the trial court stated:
 "Finding as I have expressly said on the record that he can't knowingly and voluntarily and intelligently waive the right to jury trial is not a comment on his present competence to stand trial. Conversation with which I have just had with Mr. Cowan reenforces my decision that I don't find any bonafide reason to believe that he is not competent to stand trial. He seems to be aware of what's going on, continuing to have an awareness of court proceedings and what they are and what the possible outcomes of them are. . . ."
With regard to the disturbances created by the appellant's conduct at trial, the trial court stated, "I'm not going to say that Mr. Cowan is play acting in this case. But I am going to say the record is strong and suggestive of that."
In this case, the trial court was entitled to rely upon the jury's determination of the appellant's competency to stand trial.
 II.
The appellant argues that the evidence is constitutionally insufficient to support a conviction for capital murder-robbery under Ala. Code 1975, § 13A-5-40(a)(2), because the State failed to prove that the murder was committed during the commission of a first degree robbery. The appellant argues that the tragic killing was "a random, bizarre and senseless shooting with no apparent motive," and that the taking of the automobile was "a mere afterthought." Appellant's brief at 6. We reject this argument based upon the facts presented at trial.
In his sentencing order, the trial court summarized the facts of the crime:
 "On May 26, 1987, Felecia McCall was driving her mother's car to school. She stopped for a traffic light at the intersection of Bell and Holt Streets. In front of her car was [a] van driven by Mrs. Darrington.
 "Cowan was walking East on Bell Street. He appeared angry and was talking to himself and using profanity. After he walked past the van driven by Mrs. Darrington he approached Miss McCall's car, demanded she get out and he then shot her. Cowan leaned inside the car, shot Miss McCall two more times, pulled her out into the street and drove off in her automobile.
 "Cowan drove onto Maxwell Air Force Base where he was ultimately stopped at a school crossing and he was arrested by Air Force Security Police for reckless operation of a car. He was shortly transferred into the custody of Montgomery Police Officers.
 "Cowan apparently did not know Miss McCall or any members of her family; and the Court finds that Miss McCall was *Page 17 
a random victim of the homicide and robbery."
The trial court found that the State proved "beyond a reasonable doubt" the aggravating circumstance that the capital offense was committed while the appellant was engaged in the commission of a robbery of Miss McCall.
In a prosecution for capital murder-robbery under Ala. Code 1975, § 13A-5-40(a)(2), the State must prove that the murder occurred during the commission of a first degree robbery or an attempt thereof. Beverly v. State, 439 So.2d 758, 761-62
(Ala.Cr.App. 1983).
There was evidence that immediately before the shooting and murder, the appellant was "eyeing every automobile" and "acting angry." There was evidence that the appellant told Miss McCall to "get out of the car" and then the appellant shot her; that the appellant told her to get out of the car three times and shot her three times; and that the appellant told her to get out of the car before he fired the pistol. One witness testified, "That's before the shot. When he said get out the car, he shot. After he said get out the car, he shot." After that, the appellant pulled the body out of the car, and "hopped in the car and took off." There was evidence that Miss McCall was a teenager. These circumstances supply the rational and reasonable inference that the appellant was seeking his victim and that the murder was committed during the course of a robbery.
 "Although a robbery committed as a 'mere afterthought' and unrelated to the murder will not sustain a conviction under § 13A-5-40(a)(2) for the capital offense of murder-robbery, . . . the question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve. . . . The jury may infer from the facts and circumstances that the robbery began when the accused attacked the victim and the capital offense was consummated when the defendant took the victim's property and fled. . . . The defendant's intent to rob the victim can be inferred where '[t]he intervening time, if any, between the killing and robbery was part of a continuous chain of events.' . . .
 "The question this Court must answer is whether 'there was sufficient evidence presented by the State, from which the jury could infer that the appellant was guilty of the capital offense charged, beyond a reasonable doubt.' "
Connolly v. State, 500 So.2d 57, 63 (Ala.Cr.App. 1985), affirmed, 500 So.2d 68 (Ala. 1986).
 III.
The appellant argues that the trial court erred in not granting his motion for new trial on the ground that he was not guilty by reason of insanity. It appears that there was no hearing on the motion for new trial and that no additional evidence was presented to support the grounds of that motion.
Recently, in Ellis v. State, 570 So.2d 744, 751-52
(Ala.Cr.App. 1990), this Court set out the principles governing the appellate review of the sufficiency of the evidence of insanity. Applying those principles to the facts of this case, we find that the jury's verdict was not contrary to the overwhelming weight of the evidence of insanity because the evidence of insanity was disputed and conflicting. Contrary to the appellant's argument, the evidence of insanity is not direct and compelling in this case. In fact, quite the contrary, the evidence of both competency to stand trial and legal insanity is conflicting and sharply in dispute, both at trial and at the competency hearing. See Part I of this opinion.
At trial, defense witness Dr. Claude L. Brown, a psychiatrist, testified that the appellant was suffering from schizophrenia undifferentiated and at the time of the crime was unable to appreciate the criminality of his conduct and lacked the capacity to conform his conduct to the requirements of law. The testimony of lay witness called by the defense also tended to support his insanity defense.
In rebuttal, Dr. Wilburn H. Rivenbark, the chief of psychology and the coordinator of the evaluation services at Taylor Hardin Secure Medical Facility, testified for the *Page 18 
prosecution that, although the appellant "does have some mental disorder," he was not psychotic or schizophrenic but was suffering from a personality disorder, "probably a mixture of schizotypal and antisocial." Dr. Rivenbark testified that this was a "difficult" and a "close" decision.
 "Neither the trial court, nor this court on review, can usurp the province of the jury in weighing the evidence and passing upon the credibility of the witness[es], and if the evidence, and the inferences to be reasonably drawn therefrom, are sufficiently substantial to support the finding of the jury, it should not be overthrown and held for naught simply because the judges reviewing the finding on the evidence possibly, or even probably, may have arrived at a conclusion different from the conclusion of the jury. This duty does not rest upon the reviewing court and is not to be included in its functions. This responsibility is solely upon the jury, the members of which have seen and heard the witnesses, and are in position to sift the truth from live testimony far better than a reviewing court can perform this function by reading such testimony in cold type in a record."
Autry v. State, 34 Ala. App. 225, 229-30, 38 So.2d 348, 351
(1949). Despite the fact that the appellant did present a strong insanity defense, the evidence was not so clear and convincing as to compel a verdict in his favor. We agree with Dr. Rivenbark's testimony that this was a "close call." However, "[a]n appellate court, in reviewing a grant or denial of a new trial motion, is obliged to indulge every presumption in favor of the correctness of the trial court's decision." Exparte Robinson, 565 So.2d 664, 667 (Ala. 1990).
 IV.
Under the decision of this Court in Brown v. State,571 So.2d 345 (Ala.Cr.App. 1990), we find that the trial court did not abuse its discretion in denying the appellant's request to voir dire the prospective jurors individually. The appellant has failed to demonstrate that the nature of the pretrial publicity raises a significant possibility of prejudice. Here, the trial court stated: "I will ask the jury some limited questions about publicity and see if they have heard anything or know of anything about the case and so on and so forth. If anybody says they do, then ya'll can individual voir dire them." We find no abuse of the discretion of the trial court.
 V.
The appellant argues that the State violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala. 1987), in its use of five of its peremptory strikes to remove blacks from the jury venire. There were 11 blacks on the venire. Both the victim and the appellant are black. Apparently, there were six blacks on the jury. The trial court found not only that the appellant had failed to present a prima facie case of racial discrimination, but also that the State had given race-neutral reasons for striking each black venire person.
The State's reasons for the exercise of its peremptory strikes against black veniremembers were as follows: 1) No. 66 indicated that she was sympathetic to the appellant, had cotton in her ears due to surgery, had difficulty in hearing, and had been unemployed for a year and a half and was "basically in the same situation" as the appellant. At trial, there was evidence that the appellant had been unemployed for a lengthy period of time, and that he would place paper in his ears. 2) No. 39 had a 1973 conviction for larceny. 3) No. 28 had basically no employment from 1982 to 1989 and was approximately the same age and in the same situation, with regard to unemployment, as the appellant. 4) No. 17 had had no visible means of support for the past four years and "could identify with the defendant being in the same situation he was in." 5) No. 36 had a DUI conviction in 1979 and 1982, a speeding conviction in 1986, and a "drunk" conviction in 1973. There was evidence presented that the appellant had a history of alcohol and substance abuse. *Page 19 
Our review of the stated reasons for the jury strikesand the evidence presented at trial, shows that the State satisfied its "burden of articulating a clear, specific, and legitimate reason for the challenge which relates to theparticular case to be tried, and which is nondiscriminatory."Branch, 526 So.2d at 623. We find no abuse of the trial court's discretion in denying the appellant's motion to quash the jury.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] "The state possesses the burden, in a hearing to redetermine the competency of defendant to stand trial, to go forward with the evidence and to overcome a presumption of incompetency by a preponderance of the evidence, where defendant has on a prior occasion or occasions been adjudged mentally incompetent to stand trial. In such a hearing, substantial evidence must be presented by the state to support a determination of competency." 22A C.J.S. Criminal Law § 554(b) (1989) (footnotes omitted). "One adjudicated to be incompetent is ordinarily presumed to remain in that state until a proper hearing is held and he is adjudicated mentally competent." 21 Am.Jur.2dCriminal Law § 105 (1981) (footnote omitted).