COBB, Judge.
Wilbur Rodney King was convicted of intimidating a witness, a violation of § 13A-10-123, Ala.Code 1975. King was sentenced to 10 years’ imprisonment.
King’s witness-intimidation conviction arose out of a situation of domestic violence and, in that regard, appears to present a case of first impression in Alabama.[1] The State’s evidence tended to show the following: Patricia S. King had filed for divorce from the appellant, Wilbur Rodney King, in February 1996. Civil restraining orders and criminal arrest warrants were issued after Mr. King repeatedly harassed Mrs. King. Mr. King violated a restraining order in March 1996; that violation resulted in a petition for a rule nisi. Mr. King was ordered to appear in family court on May 31, 1996, to show cause why he should not be held in contempt for violating the restraining order. On April 26, 1996, Mr. King was arrested and charged with making a harassing communication. A trial on the harassing communication charge was set for May, but was continued until June 4.
Mrs. King was a party, a subpoenaed witness, or the prosecuting witness in all the above-described proceedings. On May 25, 1996, while the proceedings were pending, Mr. King telephoned Mrs. King’s mother; however, Mrs. King’s brother, Bob Smith, answered the telephone. Smith testified that during the conversation, Mr. King “started making threats about my sister and going along with whatever deal he wanted for the divorce, and that if things didn’t go his way he would see to it that she was dead and that everybody that tried to help her, he would take care of them too_” (R. 90.) Smith also testified that Mr. King specifically stated that he would “cut out her eyes and send them back to [the family].” (R. 90-91). Almost immediately after that telephone conversation, Mr. King again called Smith. Realizing that it could be Mr. King, Smith did not answer the telephone, but let the answering machine record the repeated death threats.
I.
Mr. King argues that there was insufficient evidence to convict him of intimidating a witness.
Section 13A-10-123, Ala.Code 1975, provides:
“(a) A person commits the crime of intimidating a witness if he attempts, by use of a threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to:
“(1) Corruptly influence the testimony of that person;
“(2) Induce that person to avoid legal process summoning him to testify; or
“(3) Induce that person to absent himself from an official proceeding to which he has been legally summoned.
*263 “(b) Threat, as used in this section, means any threat proscribed by Section 13A-6-25 on criminal coercion.”
Section 13A-6-25, Ala.Code 1975, provides:
“(a) A person commits the crime of criminal coercion if, without legal authority, he threatens to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act.”
The State’s evidence tended to show that Mr. King knew or at the very least believed that his wife, Mrs. King, would be called as a witness, or would be a party or the prosecuting witness, in the proceedings against him, given the nature of the proceedings. During the telephone conversation with Smith, Mr. King made physical threats directed toward Mrs. King and her family. He also made specific reference to what he wanted as part of the property settlement in the divorce. (R. 90). Bob Smith testified that during his telephone conversation with Mr. King, Mr. King “started making threats about my sister and going along with whatever deal he wanted for the divorce, and that if things didn’t go his way he would see to it that she was dead and that everybody that tried to help' her, he would take care of them too_” (R. 90). Bob Smith further testified that Mr. King specifically stated that he would “cut out her eyes and send them back to [the family].” (R. 90-91.)
After conceding that the message left on the answering machine was “rude, crude and certainly constituted harassing communications,” Mr. King argues that the message did not, however, constitute the crime of intimidating a witness because, he says, it did not “corruptly influence the testimony of that person.” (Appellant’s brief, p. 4.) Mr. King further contends that there was “no nexus between the harassing phone calls and any purported testimony in the divorce or any intent on the part of the Defendant with the exception to annoy and harass the complainant.” (Appellant’s brief, p. 6.)
However, the answering machine recorded three messages, each one containing expletives and death threats, referring to the graveyard, “maggot bait”, and nonexistence. Specifically, one message stated, “if you want to have a 30-year-old daughter, you better talk to her because she ain’t gonna reach 31.” “Tell that son of a bitch she better agree with what I gave her, if not, the motherfucker is going to be maggot bait.” (State’s exhibit 3.) Based on the foregoing, it is clear that it was Mr. King’s intent to coerce his wife, Patricia King, into acquiescing to his divorce demands by the use of physical threats.
Yet, Mr. King argues that the calls did not constitute intimidation because, he says, he did not corruptly influence testimony as required to violate § 13A-10-123(a)(l), Ala. Code 1975. However, his persistent threats toward Mrs. King and Smith did include reference to the divorce proceeding and his desire for a divorce settlement. “Tell that son of a bitch she better agree with what I gave her, if not, the motherfucker is going to be maggot bait.” Mr. King’s physical threats could be deemed as a manifestation of the intent to corruptly influence Patricia King’s testimony regarding the divorce settlement, persuade her to avoid the legal process, or avoid any one or all of the proceedings to which she had been legally summoned. Even on appeal, Mr. King admits that he wanted to “coerce settlement.” (Appellant’s brief, p. 5 and reply brief, p. 2).
Furthermore, when an appellate court reviews a conviction for sufficiency of the evidence to support the conviction, the appellate court “must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” Faircloth v. State, 471 So.2d 485, 489 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). A conviction will not be disturbed on the grounds of insufficiency of evidence “unless, allowing all reasonable presumption for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust.” *264 Jackson v. State 516 So.2d 726, 753 (Ala.Crim.App.1985).
Therefore, it is our opinion that the foregoing evidence presented by the State is sufficient evidence from which a jury might reasonably conclude that Wilbur Rodney King was guilty of intimidating a witness. See Bolden v. State, 568 So.2d 841 (Ala.Crim.App.1989); Logue v. State, 529 So.2d 1064 (Ala.Crim.App.1988); Wallace v. State, 27 Ala.App. 545, 176 So. 310 (1937).
II.
Mr. King also argues that the trial court erred by admitting into evidence, the tape-recording from the answering machine without first laying a predicate according to Voudrie v. State, 387 So.2d 248 (Ala.Crim.App.1980).
The Voudrie seven-pronged test for admission of sound recordings was deemed no longer applicable in Jackson v. State, 594 So.2d 1289 (Ala.Crim.App.1991), so long as the accuracy and reliability of the sound recordings could be demonstrated by a witness. “[A]ll that is required is to show that the recordings are ‘reliable ^representation of the subject sound.’ ” Barnett v. State, 639 So.2d 527, 529 (Ala.Crim.App.1993) (citations omitted). Bob Smith testified to the accuracy and reliability of the recordings. (R. 91-93.) And Mr. King himself admitted to making the calls and leaving messages that were “rude, crude and certainly constituted harassing communications.” (Appellant’s brief p. 4.)
Based on the foregoing, the trial court did not err by admitting the tape-recording from the answering machine.
For the above-stated reasons, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
LONG, P.J., and MeMILLAN, BROWN, and BASCHAB, JJ., concur.

. According to Connick and Davis, Examining the Problem of Witness Intimidation, 66 Judicature 439, 441 (1983), victims of domestic violence are particularly vulnerable to witness intimidation; a study reported in that article found that "witnesses involved in more serious cases, witnesses who knew the defendant before the crime, and female witnesses were significantly more likely than others to be threatened."