552 So.2d 164 (1989)
Clinton TOLBERT
v.
STATE.
1 Div. 802.
Court of Criminal Appeals of Alabama.
June 16, 1989.
Rehearing Denied July 21, 1989.
Certiorari Denied October 27, 1989.
J. Langford Floyd, Daphne, for appellant.
Don Siegelman, Atty. Gen., and Robert E. Lusk, Jr., Asst. Atty. Gen., for appellee.
Alabama Supreme Court 88-1389.
TYSON, Judge.
Clinton Tolbert was indicted by the Grand Jury on three charges for the unlawful sale of marijuana (Count I, CC-87-491; CC-87-492; Count I, CC-87-493), in violation of § 20-2-70, Code of Alabama 1975 and for trafficking in marijuana (CC-87-494), in violation of § 20-2-80, Code of Alabama 1975. These cases were consolidated for trial. The jury found the appellant guilty on two charges of the unlawful sale of marijuana (CC-87-491, CC-87-493), not guilty on one charge for the unlawful sale of marijuana (CC-87-492), and guilty of trafficking in marijuana (CC-87-494). The appellant was sentenced to eight years' imprisonment on each of the two unlawful sale convictions and to 15 years' imprisonment on the trafficking conviction.
From March until July of 1987, Gordon Dixon worked as a confidential informant for the Baldwin County Sheriff's Department, under the supervision of Officer Paul Surrey. During this time, on April 15, 1987, Dixon went to the appellant's home and made contact with the appellant, who the police suspected was unlawfully dealing *165 in drugs. In the course of conversation, Dixon asked this appellant if he knew where he could get some marijuana. The appellant told Dixon he would check into it.
Dixon kept in touch with the appellant for the next few days while the appellant was trying to locate some marijuana.
On April 20, 1987, the appellant called Dixon and told him he had some marijuana. The two agreed upon the price of $250 for one-quarter of a pound. The next day, April 21, the appellant drove to Dixon's house towing an automobile he was going to sell to Dixon. The appellant told Dixon that the "stuff" Dixon wanted was underneath the seat of the vehicle which Dixon was going to purchase. Dixon reached under the seat of the vehicle and pulled out a brown paper bag which contained a zip-loc bag with green plant material in it. Dixon paid the appellant $275 for this substance.
Dixon turned over this evidence and a tape of his conversation with this appellant on this day to Surrey. The substance was determined to be marijuana and it weighed 107.3 grams (or 3.78 ounces).
On May 12, 1987, Dixon and the appellant talked about another purchase of marijuana. On May 14, 1987, the appellant came to Dixon's house and gave him another brown paper bag which contained a ziploc bag with green plant material in it. Dixon then paid $300 for this buy.
Dixon turned over this evidence and a tape of this conversation with the appellant to Surrey.
The green plant material was determined to be marijuana with a total weight of 110 grams (or 3.85 ounces).
On June 16, 1987, the appellant left Dixon a message that he wanted to talk. Dixon went to the appellant's house and the appellant sold Dixon a bag containing 6.4 grams (or 0.2 ounce) of marijuana for $30.
On June 27, 1987, the appellant went to Dixon's house and told him that the man he got his marijuana from had received a large shipment of marijuana. The appellant said that he could get Dixon all of the marijuana that he wanted for $1,000 a pound. Dixon agreed to take five pounds, and he told the appellant to meet him at his (Dixon's) house at 8:00 the next morning, June 28, 1987.
The appellant arrived at Dixon's house at 8:00 the next morning and removed an ice chest, containing five large bags of green plant material, from his automobile. Dixon put the ice chest in his vehicle and told the appellant that they had to deliver the marijuana to his (Dixon's) man. The two drove to a location on a dirt road off of Highway 90. By prearrangement, Officers Surrey, Long, and Smith met the appellant and Dixon there and arrested them both. Dixon was arrested in order to maintain his cover.
The green plant material in the ice chest, as well as a tape recorded that day, was then turned over to Surrey. The green plant material was determined to be marijuana. The total weight of the five bags of marijuana was 4.85 pounds (or 77.52 ounces). Tony Crawley and George Massey testified for the defense and stated that they met Dixon through this appellant. Crawley testified that he saw Dixon use or furnish marijuana on several occasions. He said he also saw Dixon take a substance from a box which Dixon said was "speed."
Massey testified that the appellant furnished him with six "hits" of speed.

I
The following occurred prior to the trial of this case:
"MR. FLOYD [defense counsel]: Your Honor, we would like to move to exclude all the members on the panels, to challenge every person for cause that sat on that previous jury due to the fact that it was the same exact charge, they just came back from that other case, and it was a guilty verdict, the exact same witnesses are going to testify in this case who testified in that one, and we feel to have to strike from them will give undue prejudice on my client, that he is not getting the right to a fair group of the venire. They are already tainted.
"THE COURT: Let the record show that we are interchanging panels between *166 three judges, and if some of them are here on that same case that was before, we can't help it, but the facts are going to be different.
"I don't see how we can try a case using all the panels interchangeably without having some that have been on other juries. You accept?
"MR. FLOYD: Yes, Your Honor." (R. 5)
The appellant contends on appeal that his motion to exclude the jury venire should have been granted. We disagree.
"The general rule is that `absent some evidence of actual partiality, a juror is not disqualified merely because he previously sat in a similar case arising out of a separate and distinct set of circumstances even though the offenses charged in the cases are similar and some of the same prosecution witnesses testify in each case.' Government of Virgin Islands v. Williams, 476 F.2d 771, 773 (3rd Cir.1973). It is not a ground for challenge for cause in a drug prosecution that a juror had served on the previous day on a case involving a similar charge in which the same undercover officer had testified as a witness for the State. Hill v. State, 348 So.2d 848, 856-57 (Ala.Cr.App.), cert. denied, 348 So.2d 857 (Ala.1977)."
Roberts v. State, 472 So.2d 444, 445-46 (Ala.Cr.App.1985).
The appellant has not alleged the existence of actual partiality by any juror in particular or the venire as a whole nor is there any evidence in the record of actual partiality since the voir dire examination of the jury venire is not included in this record. Thus, this issue is without merit. No error is shown.

II
The appellant contends that the trial court improperly admitted four tape recordings (three tapes of the drug buys and one tape of the appellant's statement) into evidence because the State failed to prove a proper chain of custody of these items.
The record shows that Dixon maintained custody of the three tape recordings of the drug buys until he turned them over to Surrey. Surrey testified that he placed these tapes, along with a tape of the appellant's statement, in the evidence locker until two weeks prior to trial when he allowed Dixon to remove them so that defense counsel could listen to these tapes. He stated that the evidence locker remained locked while the tapes were in his custody and he and Officer Harry D'Olive had the only keys to the locker. D'Olive kept his key in a locked filing cabinet. The sheriff of Baldwin County also had a key to this filing cabinet.
Dixon used the sheriff's key to the filing cabinet to obtain D'Olive's key to the evidence locker in order to get to the tapes so that defense counsel could listen to the tapes. From this point on, Dixon kept the tapes in his possession until this trial. Dixon listened to the tapes prior to trial and testified that the tapes fairly and accurately represented the conversations between himself and the appellant at the time of three of the marijuana buys at issue. Surrey stated that the tape of the appellant's statement was a fair and accurate representation of the events at the time of the appellant's statement. Both Dixon and Surrey testified that the tapes had not been altered or tampered with in any way.
The appellant contends on appeal that the State failed to establish a proper chain of custody because the sheriff had a key to the filing cabinet which contained Harry D'Olive's key to the evidence locker.
"The establishment of a chain of custody is needed to show a reasonable [probability] that evidence has not been tampered with or altered. Smith v. State, 446 So.2d 68 (Ala.Crim.App.1984); Tate v. State, 435 So.2d 190 (Ala.Crim.App. 1983). However, it is not necessary to prove to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object at the commencement of the chain. Slaughter v. State, 411 So.2d 819 (Ala.Crim.App.1981), cert. denied, 411 So.2d 819 (Ala.1982). See also, Mauldin v. State, 402 So.2d 1106 (Ala.Crim.App.1981); Sexton v. *167 State, 346 So.2d 1177 (Ala.Crim.App.), cert. denied, 346 So.2d 1180 (Ala.1977). Moreover, where a weak link in the chain of custody is said to exist, it presents a question of the credit and weight to be afforded the evidence rather than the admissibility of the item. Williams v. State, 375 So.2d 1257 (Ala.Crim.App.), cert. denied, 375 So.2d 1271 (Ala.1979)."
Sommer v. State, 489 So.2d 643, 645 (Ala. Cr.App.1986).
We hold that the State did establish a sufficient chain of custody as to these tapes. The existence of the extra key went to the weight, not the admissibility, of the tapes.

III
The appellant contends that the State failed to prove a prima facie case of trafficking in marijuana. Section 20-2-80, Code of Alabama 1975, provides: "(1) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as `trafficking in cannabis.'" Marijuana is defined as:
"All parts of the plant Cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. Such term does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination."
Ala.Code, § 20-2-2(15) (1975).
Joseph Gary Wallace, a criminalist with the Department of Forensic Sciences, testified that he examined all of the plant material in State's Exhibit # 9 and determined that the plant material was marijuana. He stated that the total weight of the material was 4.85 pounds. See Dickerson v. State, 414 So.2d 998 (Ala.Cr.App.1982). Wallace testified that there were some plant fragments included in State's Exhibit # 9 which were not marijuana, but he said this material amounted to less than one per cent of the total weight of the material. Wallace stated that he did not note the presence of any stalks in the plant material but he said there were some seeds included in the material. However, he testified that the seeds were not a significant amount.
The appellant argues on appeal that the State failed to prove his possession of more than 2.2 pounds of marijuana because some excludable material was included in the total weight of the marijuana. We disagree. In Browning v. State, 549 So.2d 548 (Ala. Crim.App.1989), we held that the State did establish a prima facie case of trafficking in marijuana even though the weight of the plant material (4.845 pounds) included some non-marijuana fragments which amounted to less than one percent of the total weight. In the case at bar, Wallace testified that the amount of non-marijuana material present in the 4.85 pounds of plant material was also less than one percent of the total weight. He stated that there was not a significant amount of seeds present in the plant material. Thus, we find that the State did present sufficient evidence that the appellant possessed the requisite amount of marijuana to sustain his conviction for trafficking in marijuana.

IV
The following occurred during the presentation of the defense:
"MR. FLOYD:
"At this time, the Defendant would advise the Court that we have traveling to the Court a lady by the name of Grace Spears (phonetic). Can I go ahead and make an offer as to her testimony?
"THE COURT:
"Yes.
"MR. FLOYD:
"We would like to offer her testimony for impeachment purposes against Gordon Dixon concerning on two or three *168 occasions being provided cocaine by Gordon Dixon and both using and being supplied cocaine by Gordon Dixon. She cannot possibly be here before in the morning. The trial has gone on for a day and a half and it is approximately quarter to four now and we would ask the Court to allow the case to be continued until the first thing in the morning until she can be here to testify.
"THE COURT:
"This is down to the last witness. This lady is a non-resident of the State of Alabama, is not under subpoena, and the Court does not know whether the lady will show up or not even if we waited until tomorrow.
"What about just letting him give a showing to the Jury?
"MS. STUART:
"Judge, I am reluctant to make such a showing.
"THE COURT:
"Well, he has already had two witnesses to testify to it.
"MR. FLOYD:
"We asked Mr. Dixon on cross-examination if he knew Grace Spears (phonetic) and he said no. But he also said that he did know several people at Club Carroll but did not know their names. Whether after he saw her it would make him change his testimony but he has stated under oath that he has never done anytime since this investigation went on provided or used cocaine. Her testimony would be that he has, in fact, used it with her.
"MS. STUART:
"When do you expect her to be here?
"MR. FLOYD:
"She was leaving at noon today to travel here for the purpose of testifying and we would ask the Court's indulgence. We know it has been a long trial.
"THE COURT:
"You don't have enough substance for me to bind it over.
"MR. FLOYD:
"At this time with the Court's ruling, we would rest. We would like to renew our motioncan I have just a moment to talk to my client?
"(Short pause.)
"MR. FLOYD:
"At this time, the defense rests." (R. 209-11).
The appellant contends that the trial judge should have granted his motion for a continuance.
"Not every denial of a motion for continuance to obtain witnesses violates the accused's right to compulsory process. See, e.g., McKinney v. Wainwright, 488 F.2d 28 (5th Cir.), cert. denied, 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562 (1974). A court may not, however, refuse to grant a reasonable continuance for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense. Hicks v. Wainwright, 633 F.2d 1146 (5th Cir.1981); Singleton v. Lefkowitz, 583 F.2d 618 (2d Cir.1978). In Hicks this Court recently enunciated several factors which are to be considered in determining whether an accused was deprived of his right to compulsory process by a denial of a motion for continuance:
"[T]he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which the testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony. 633 F.2d [at] 1149 (quoting United States v. Uptain, 531 F.2d 1281, 1287 (5th Cir.1976) (footnotes omitted))."
Barton v. State, 494 So.2d 943, 949 (Ala. Crim.App.), cert. denied, (Ala.1986); Dickerson v. Alabama, 667 F.2d 1364, 1369-70 (11th Cir.1982)).
There is no evidence in this record as to what steps defense counsel took to secure the absent witness's presence at trial. Thus, we are unable to determine whether defense counsel exercised due diligence in attempting to procure the missing witness's *169 presence. From the record, it appears that this witness would have been available to testify within a reasonable time. Defense counsel made his motion for a continuance at 3:45 p.m. and stated that the witness would be present at trial the next morning. He stated that the witness would testify that Gordon Dixon had supplied her with cocaine and that she had used cocaine with Dixon. Her testimony would have been favorable to the appellant but it was not unique. Two defense witnesses had already testified that Dixon supplied them with drugs and that he had used these drugs himself. Thus, the absent witness's testimony would have been merely cumulative of other evidence already presented at trial. Thus, we do not find that the trial court's denial of the appellant's motion for continuance violated the appellant's right to compulsory process in this instance. See Barton.
For the reasons stated above, the judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only with opinion, in which McMILLAN, J., joins.
BOWEN, Judge, concurring specially in result only.
I concur in the result reached by the majority.
The tape recordings discussed by the majority in Part II of its opinion were properly admitted into evidence. "A proper foundation laid for the accuracy of what the [tape recordings portray] obviates the need to establish a chain of custody to demonstrate its [their] authenticity." Molina v. State, 533 So.2d 701, 712 (Ala.Cr.App.1988), cert. denied, Molina v. Alabama, ___ U.S. ___, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989).
In Part IV, the majority finds that the denial of the defendant's motion for a continuance was not error. I agree, because unless the defendant was claiming entrapment, Ms. Spears's expected testimony was irrelevant to any issue. It could not be used for impeachment, because a witness may not be impeached as to specific bad acts of the witness which have no relevancy except to show the witness's bad character. Smitherman v. State, 521 So.2d 1050, 1055-57 (Ala.Cr.App.1987), cert. denied, Ex parte Smitherman, 521 So.2d 1062 (Ala. 1988).