572 So.2d 543 (1990)
Larry Bernard GREEN, Appellant,
v.
STATE of Florida, Appellee.
No. 87-03552.
District Court of Appeal of Florida, Second District.
December 14, 1990.
*544 James Marion Moorman, Public Defender, and Stephen Krosschell, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
LEHAN, Judge.
We affirm the convictions and sentences for battery on a law enforcement officer and resisting arrest with violence.
We disagree with the black defendant's contention on appeal that the trial court erred in overruling the defendant's objection to the state's peremptory challenge of one of two black prospective jurors. The state said it would not challenge the other and did not do so. The defendant's only basis for the objection was that the challenged prospective juror was one of two black prospective jurors.
In this opinion we undertake to clarify somewhat a particular aspect of the case law regarding peremptory challenges of jurors who are members of a distinct racial group, an aspect which has not been dealt with consistently in all the district court of appeal cases. That aspect concerns the initial burden which must be carried by a party objecting to an allegedly racially discriminatory peremptory challenge in order to shift to the challenging party the burden of showing racially neutral reasons for the challenge. This opinion indicates why that initial burden was not carried in this case, compares circumstances under which that burden has and has not been carried in other cases, and describes the significance of that burden in any case.
The trial court's overruling of the foregoing defense objection has not been affirmed on the ground argued in the trial court that the state carried its burden of showing that its peremptory challenge was for racially neutral reasons. Rather, our affirmance is on a ground not raised in the trial court: that the defense did not carry its initial burden which must be carried to require the state to carry a burden of the kind argued in the trial court. That was the initial burden of showing pursuant to State v. Neil, 457 So.2d 481, 486 (Fla. 1984), that "there is a strong likelihood that [the subject juror has] been challenged solely because of ... race." See also Reed v. State, 560 So.2d 203, 205 (Fla. 1990); Kibler v. State, 546 So.2d 710, 712 (Fla. 1989); State v. Slappy, 522 So.2d 18, 21 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); Blackshear v. State, 521 So.2d 1083, 1084 (Fla. 1988). Other cases which have found that initial burden to have not been carried include State v. Williams, 566 So.2d 1348 (Fla. 1st DCA 1990) (that the state peremptorily challenged three out of six prospective black jurors did not overcome the presumption that the peremptory challenges were exercised in a nondiscriminatory manner and shift the burden to the state to show racially neutral reasons for the challenges); Dinkins v. State, 566 So.2d 859 (Fla. 1st DCA 1990) (that the state peremptorily challenged the first black person on the jury panel was insufficient to shift to the state the burden to show lack of racial motivation in its challenge); and Verdelotti v. State, 560 So.2d 1328 (Fla. 2d DCA 1990) (that the state peremptorily challenged one out of three prospective black jurors did not establish a prima facie case of racial discrimination so as to shift to the state the burden to show lack of racial motivation in its peremptory challenge).
That initial burden may be carried in a particular case by a showing that "the state [has] engage[d] in a pattern of excluding a minority... ." Slappy, 522 So.2d at 23. That showing was not made in this case, where one out of two prospective black jurors was challenged, or in Verdelotti, where one out of three was challenged. Nor was it found to have been made in Williams, where three out of six were challenged, or in Dinkins, where the first black person on the panel was challenged. In contrast, that showing was made in Holton v. State, 573 So.2d 284, 286-287 (Fla. 1990) (state peremptorily challenged the only two black persons in the *545 first group of prospective jurors and then peremptorily challenged a third prospective black juror who apparently was in a subsequent group); Bryant v. State, 565 So.2d 1298, 1300 (Fla. 1990) (state peremptorily challenged five prospective black jurors out of its first seven peremptory challenges); Slappy, 522 So.2d at 19 ("Four of the state's six peremptory challenges were used to exclude blacks from the panel... ."); Foster v. State, 557 So.2d 634 (Fla. 3d DCA 1990) (state had peremptorily challenged three out of five prospective black jurors); Timmons v. State, 548 So.2d 255, 257 (Fla. 2d DCA 1989) (state had peremptorily challenged the sole prospective black juror on the venire after another black juror had been excused for cause); Mack v. State, 545 So.2d 489 (Fla. 2d DCA 1989) (state had peremptorily challenged three out of five black prospective jurors); and Sampson v. State, 542 So.2d 434, 435 (Fla. 4th DCA 1989) (state used its first two peremptory challenges against two of the "very few minorities on the panel").
The potential range of other circumstances under which that initial burden could be carried has not been spelled out in the case law. See Slappy, 522 So.2d at 21. Although any doubt in that regard should be resolved against the validity of the challenge, id. at 22, no pattern of excluding a minority or other showing of a strong likelihood that the challenge was solely because of race was made in this case through the foregoing basis for the defense objection to the state's challenge.
The Florida Supreme Court's statement in Slappy condemning on constitutional grounds "the striking of a single black juror for a racial reason," 522 So.2d at 21 (quoting United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987)), does not call for a reversal in this case. Slappy does not condemn the striking of a single black juror as such. It does so only if the juror was stricken "for a racial reason," a showing of which requires that the above described initial burden of proof be carried and then be not satisfactorily rebutted by the state. See also, e.g., Williams v. State, 567 So.2d 1062 (Fla. 2d DCA 1990); Dinkins. But see Mitchell v. State, 548 So.2d 823, 824 (Fla. 1st DCA 1989) (while reciting that defendant had shown a substantial likelihood of racial discrimination in the state's peremptory challenges of two black prospective jurors thereby placing upon state burden of showing racially neutral reasons for the challenges, court gave no basis upon which such a substantial likelihood appeared other than stating that "the exclusion of even a single prospective black juror for a racially impermissible reason may be a violation of equal protection.").
Thus, we hold that the state in this case never had a burden of showing that its challenge was racially neutral. That is, the state was entitled to exclude the black prospective juror without expressed justification, as the state  or, for that matter, the defense  could have done with any other prospective juror until its allotted peremptory challenges were exhausted.
As indicated above, at the point in this case in the trial court at which defendant raised his objection to the state's challenge of the prospective juror, the state did not object to defendant's failure to carry his initial burden. Yet the trial court at that point appears to have preempted the situation and to have disposed of any occasion for such an objection by the state by forthwith requiring the state to justify the challenge and then ruling in the state's favor. Also, it has been held in effect that even the volunteering by the state of its reason for its challenge in a case like this before the defendant has carried his initial burden is not a waiver of that initial burden. See Dinkins.[1]
*546 While the trial court did not refer to the failure of defendant to carry that initial burden as a basis for overruling defendant's objection (nor did the state call attention to that aspect on appeal), that failure requires this court's affirmance. See Grant v. State, 474 So.2d 259, 260 (Fla. 1st DCA 1985). It should also be noted that there is no other valid ground for an affirmance regarding the trial court's ruling on defendant's objection to the state's peremptory challenge. The only basis given by the state for its challenge prior to the trial court's overruling of defendant's objection was insufficient to establish a racially neutral reason for the challenge. That basis was given in the following colloquy between the court and counsel for the state: "What's your reason for striking this juror ...?" "Judge, I just don't like his answers to  his responses to my questions. I'm not striking him based on race." "Do you have any specifics?" "Nothing specifically, Judge. I would only add that I'm not going to strike the other black juror." See Slappy, 522 So.2d at 22 (when state has the burden to show that its peremptory challenge was not racially motivated, in order to carry that burden the state's reason for the challenge must be "a `clear and reasonably specific' racially neutral explanation") (quoting Batson v. Kentucky, 476 U.S. 79, 96-98 & n. 20, 106 S.Ct. 1712, 1722-24 & n. 20, 90 L.Ed.2d 69, 87-88 & n. 20 (1986)).
The case law in this area has not been entirely consistent. There are statements in some district court of appeal cases which, as seems to have been the approach of the trial court in this case, appear mistakenly to have interpreted supreme court case law by placing on the challenging party the burden to justify its peremptory challenge of a prospective black juror upon merely the other side's objection thereto, or which can be read as having done so. See Shelton v. State, 563 So.2d 820 (Fla. 4th DCA 1990) (following state's peremptory challenge of black prospective juror, defendant's objection thereto simply on grounds that the challenged juror belonged to a distinct racial group was said to have placed upon state the burden to show racially neutral grounds for the challenge); Mitchell. Another such district court of appeal case which could be read as containing such a mistaken interpretation is Smellie. That was a civil case in which defendant had peremptorily challenged two out of four prospective black jurors, one other having been excused for cause. The appellate court, after reciting that the presumption that peremptory challenges are exercised in a constitutionally proper, i.e., racially neutral, manner could be overcome by the party objecting to the challenges carrying his initial burden of showing that there is a substantial likelihood that the challenges were based solely upon race, reversed and remanded for a new trial on the basis that a black prospective juror was improperly challenged for racial reasons. However, the opinion could be read as mistakenly using a party's failure to establish racially neutral reasons for its peremptory challenges of members of a racial minority as showing that the initial burden of the *547 objecting party was carried. The reason is that the opinion dealt only with why the challenging defendant had not shown racially neutral reasons for the challenges and did not address that, or how, the objecting plaintiff had carried his burden of overcoming the presumption of such racially neutral reasons so as to shift to the defendant the burden of showing racially neutral reasons.[2] Those district court of appeal cases in that respect may be taken to be not only not consistent with the case law referred to further above but also to be inconsistent with a fundamental part of the fairness of our jury system.
It is of fundamental importance to the fairness of our jury system to avoid, as our opinion does in this case, the emasculation of the opportunity to exercise a reasonable number of peremptory challenges of prospective jurors. That opportunity is a bedrock aspect of the fairness of that system to all citizens  those on both sides of either civil or criminal cases, including of course members of racial minorities as well as the public represented by the state. See Kibler, 546 So.2d at 714 (Ehrlich, C.J., dissenting) ("[D]espite its inherently discriminatory nature, the peremptory challenge is an essential tool in the trial lawyer's quest to obtain a fair and impartial jury."). See also Cure v. State, 564 So.2d 1251 (Fla. 4th DCA 1990) (a peremptory challenge by a black defendant of a black prospective juror which is not exercised in a racially improper manner "is to effectuate the constitutional guarantee of a trial by an impartial jury"). At the same time, the current case law has established that the importance of having the opportunity to exercise peremptory challenges does not overshadow the greater importance of preventing racial discrimination in the exercise of those kinds of challenges when the initial burden of a party objecting to a challenge as set forth in the foregoing quotation from Neil has been carried and has not been rebutted. But that burden was not carried here.
To rule that the state had a burden to show racially neutral reasons for its peremptory challenge in a case like this would seem to create a virtual presumption that any peremptory challenge by the state of a black juror is racially motivated. But, as indicated above, there is no indication that that was the Florida Supreme Court's purpose in establishing safeguards against racial discrimination in the challenges of prospective jurors. See Reed; Slappy. In the words of the supreme court in Reed, in some cases the appellate courts "must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a `feel' for what is going on in the jury selection process." 560 So.2d at 206. As Chief Judge Hersey of the Fourth District Court of Appeal said, "It is no less a commitment to the eradication of racism from the judicial process ... to apply a more cautious approach than one which assumes a racist motivation behind every peremptory challenge." Hill v. State, 547 So.2d 175, 177 (Fla. 4th DCA 1989) (Hersey, C.J., dissenting), as quoted in Verdelotti, 560 So.2d at 1329, and in Timmons, 548 So.2d at 256-57.
Stubbs v. State, 540 So.2d 255 (Fla. 2d DCA 1989), in which the state's challenge of one of two prospective black jurors shifted to the state the burden to show no racial motivation, is distinguishable. In that *548 case, in contrast to this case, the trial judge had refused to allow defense counsel to argue that the state's challenge was racially motivated and did not, but should have, "considered all relevant circumstances." 540 So.2d at 257.
When one side does not carry its initial burden in support of its objection to a challenge in a case like this, it is irrelevant whether or not the other side is shown to have had racially neutral motivations for its challenge, just as a showing of the challenging party's motivations are irrelevant to other peremptory challenges. If the motivations of a party exercising any peremptory challenge were determinative of the validity of the challenge, such challenges would of course not be peremptory.
We strike the imposition of costs and fees against defendant, an indigent, without prejudice to the state to have the costs reimposed upon proper notice and opportunity to be heard.
Affirmed.
SCHOONOVER, C.J., and THREADGILL, J., concur.
NOTES
[1] The Dinkins dissent took a contrary position. Bearing upon whether the Florida Supreme Court would agree with the majority or the dissent in Dinkins is dicta in Reed saying that "if it appeared from the prosecutor's explanation [of his reasons for his challenges] that his challenges were racially motivated, the trial judge would have been warranted in granting a mistrial despite not yet having ruled that the defense had made a prima facie showing [of a likelihood that the challenges were racially motivated]." 560 So.2d at 206. (That dicta, which appears to describe when the state will have waived defendant's initial burden, was in the context of there having been in that case a volunteered explanation by the prosecutor before any ruling as to whether defendant's initial burden had been carried, an aspect which the Dinkins dissent of course seems to have considered critical to the existence of a waiver.) As indicated in the Dinkins dissent, the state's reasons for its challenges in that case did not affirmatively show that its challenges had been racially motivated but only did not show racially neutral motivations. 566 So.2d at 861. Thus, it appears that the Dinkins majority opinion was consistent with Reed if the above quoted statement in Reed meant, as it appears to say, that an affirmative showing of racial motivation in the state's reasons for its challenges waives defendant's initial burden and did not mean that merely the state's failure to show in its reasons racially neutral motivations is such a waiver. (An example of such an affirmative showing is in Smellie v. Torres, 570 So.2d 314 (Fla. 3d DCA 1990), where the challenging party gave as a reason for his challenge of a black prospective juror his desire to create the opportunity to seat on the jury the next prospective juror who was Hispanic.) In the case at hand not only was there no volunteering by the state of its reason for its challenge, as indicated above, but also the reason the state gave when required by the trial court to do so did not affirmatively show a racial motivation, as indicated below.
[2] The result in Smellie appears consistent with Reed as Reed is discussed in footnote 1 supra in the sense that, as footnote 1 notes, in Smellie the challenging party's stated reasons for the challenges affirmatively showed racial motivation. Yet in Smellie, in contrast to Reed, the challenging party's reasons do not appear to have been volunteered but appear to have been required by the trial court without there having been a ruling as to whether the objecting plaintiff had carried his initial burden.

The holding of this court in Smith v. State, 571 So.2d 16 (Fla. 2d DCA 1990) is consistent with this opinion, defendant's convictions in that case having been reversed on the basis that the trial court had failed to conduct an inquiry into the state's reasons for its peremptory challenges of three out of four black prospective jurors. However, the Smith opinion did not explain how defendant carried his initial burden in that case and, in fact, seems to have relied in that regard upon the state's assertion that the state's not having challenged one black prospective juror showed that its three challenges did not constitute an improper systematic exclusion of blacks.