[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1291 
The appellant, Joseph Jackson, was charged in a two-count indictment with first degree rape and first degree kidnapping. A jury convicted him on both counts. He was sentenced to life imprisonment on each conviction, with the sentences to run consecutively. He was also ordered to pay $740 in restitution to the victim and $10,000 to the Crime Victims' Compensation Fund.
 I
Defense counsel made a timely motion alleging a violation ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986). He asserted that "[t]here were nine black jurors and the State has excluded six of them, which was right at fifty percent of their strikes for no apparent race-neutral reasons." R. 70. The prosecutor responded that he did not "think stating that alone is sufficient to make out a prima facie case for meaningful discrimination." He also noted that the appellant is white, rather than a member of a minority group. R. 70. Nevertheless, without waiting for the trial judge to rule whether the appellant had established a prima facie case of discrimination, the prosecutor offered explanations for each of his strikes. The prosecutor then stated that there were two black persons sitting on the jury and concluded by asserting that all of his strikes were for race-neutral reasons. R. 70-73.
The trial judge asked if there was "[a]nything else," and defense counsel did not respond to the prosecutor's statement of his reasons for striking the veniremembers. The trial judge then stated: "The Court finds that the defendant is of the Caucasian race and a prima facie showing of discrimination has not been shown. And the district attorney has given race-neutral reasons for the strikes and your motion is denied." R. 73.
The appellant was tried in January 1991. On April 1, 1991, the United States Supreme Court held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." Powers v. Ohio, ___ U.S. ___, ___, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991). Powers
unquestionably establishes that a white defendant has standing to challenge the prosecutor's use of peremptory strikes to remove blacks from the jury venire. See Ex parte Bird andWarner, 594 So.2d 676, 685-686 (Ala. 1991); Ex parte Bankhead,585 So.2d 112 (Ala. 1991). Powers, like Batson, is to be applied retroactively *Page 1292 
to cases pending on direct appeal. Cf. Griffith v. Kentucky,479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); Allen v.Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); Exparte Jackson, 516 So.2d 768, 772 (Ala. 1986).
A defendant claiming a Batson violation bears the initial burden of making a prima facie showing that the prosecution has used its peremptory strikes in a racially discriminatory manner. See Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723; Exparte Branch, 526 So.2d 609, 622 (Ala. 1987). To make such a showing, a defendant must establish relevant facts and circumstances that "raise an inference that the prosecutor used [his peremptory strikes] to exclude . . . veniremen from the petit jury on account of their race." Batson, 476 U.S. at 96,106 S.Ct. at 1723.[1] Until the defendant meets this burden, the prosecution is under no obligation to offer explanations for its peremptory strikes. See Harrell v. State, 555 So.2d 263,268 (Ala. 1989); Robinson v. State, 545 So.2d 828, 832
(Ala.Cr.App. 1989). However, once a prima facie case of discrimination is established, the burden shifts to the prosecution, which must justify its removal of black veniremembers by articulating specific, race-neutral explanations that "are related to the particular case to be tried." Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723-24.
In this case, as noted above, the prosecutor stated his reasons for his strikes prior to the trial court's finding that the appellant had not established a prima facie case of discrimination. We note that one court has stated:
 "As a practical matter, [ascertaining whether a defendant has established a prima facie case under Batson] requires the trial court to consider the State's explanation of the manner in which it employed its challenges prior to making a final determination as to whether a prima facie case exists."
State v. Antwine, 743 S.W.2d 51, 64 (Mo. 1987) (en banc), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988) (emphasis added). In that same case, the Missouri Supreme Court went on to direct Missouri trial judges "to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges." Antwine,743 S.W.2d at 64. At least one jurisdiction has expressly refused to follow this approach, State v. Goode, 107 N.M. 298,301, 756 P.2d 578, 581 (N.M.App.), cert. denied, 107 N.M. 308,756 P.2d 1203 (1988), and two other jurisdictions have implicitly done so. See People v. Granillo, 197 Cal.App.3d 110,115, 242 Cal.Rptr. 639, 641 (1987) (discussing California's prohibition on racially discriminatory use of peremptory challenges which was formulated prior to Batson);Green v. State, 572 So.2d 543, 545-46 (Fla.App. 1990), review denied, 581 So.2d 164 (Fla. 1991). The courts in Goode,Granillo, and Green adhered to the position that the defendant must establish his prima facie case before the prosecution is obligated to justify its peremptory strikes. In fact, Florida's Second District Court of Appeal indicated that even an insufficient reason advanced by the prosecution did not require a reversal by that court because the defendant had failed to establish a prima facie case at trial. Green,572 So.2d at 546-47.
In Ex parte Bird and Warner, 594 So.2d at 680, the Alabama Supreme Court, discussing the establishment of a prima facie case under Batson, held that "the State's failure to articulate a legitimate reason for one or more strikes may constitute one of the 'facts and . . . other relevant circumstances [that will] raise an inference' of discrimination." (Emphasis added.) Although the court cited Antwine to support that proposition, we do not read Ex parte Bird and Warner as a directive *Page 1293 
to Alabama trial courts to require the prosecutor, in all instances, to state his reasons for his strikes prior to the trial court's making a determination as to whether the defendant has established a prima facie case of discrimination. However, Bird and Warner does mean that where, as here, the prosecutor volunteers his reasons prior to the trial court's determination on the defendant's establishment of a prima facie case, the trial court is to consider those reasons in making that determination. This interpretation necessarily requires this Court to review those reasons in reviewing the trial court's decision on the Batson motion. See Cowan v. State,579 So.2d 13, 18-19 (Ala.Cr.App. 1990), where this Court reviewed the sufficiency of the prosecutor's reasons after commenting that the "trial court found not only that the appellant had failed to present a prima facie case of racial discrimination, but also that the State had given race-neutral reasons for striking each black venire person." Cf. McLeod v. State,581 So.2d 1144, 1154-55 (Ala.Cr.App. 1990) (where the "trial court requires the prosecutor to state his reasons for his peremptory strikes without first requiring the defendant to establish a prima facie case of discrimination, this Court will review the reasons given by the prosecutor"); Thomas v. State,555 So.2d 320, 322 (Ala.Cr.App. 1989) ("since the prosecutor's reasons for striking [black veniremembers] are on the record, we shall review the sufficiency of her explanations"); Currin v. State,535 So.2d 221, 223 (Ala.Cr.App.), cert. denied, 535 So.2d 225
(Ala. 1988) (where the trial court did not make a determination as to whether the defendant had established a prima facie case, but the prosecutor's reasons were of record, this Court reviewed the sufficiency of the reasons).
Reviewing the prosecutor's reasons for his peremptory strikes in the present case, we find two of those reasons to be insufficient.
The prosecutor stated that he struck veniremember Number 33 because
 "it was shown through voir dire that she was acquainted with and lived close to an individual named Weeda Tompkins. We are in the process of extraditing him to the State of Alabama, and the extradition has happened within the last few days. And due to the knowledge of this person, she might be prejudiced against the State in a case of this nature, and we struck her for that reason." R. 71.
A veniremember's involvement in criminal activity or his kinship to or close friendship with another who is involved in criminal activity "can . . . constitute a sufficiently race-neutral reason for the exercise of a peremptory challenge." Stephens v. State, 580 So.2d 11, 19 (Ala.Cr.App. 1990), affirmed, 580 So.2d 26 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991). However, the voir dire answers of Number 33 do not support the use of this reason in this case.
After Number 33 indicated that she did not know two individuals named by the prosecutor, the following occurred:
 "Mr. Alverson [prosecutor]: What about a person known as Weeda Tompkins?
 "[Number 33]: Oh, okay, they used to live down the street.
 "Mr. Alverson: Down the street from you-on Columbia?
"[Number 33]: Yes.
 "Mr. Alverson: When would have been the last time you would have seen him?
"[Number 33]: It's been a long time.
 "Mr. Alverson: Would it be safe to say it would have been within the last five years?
"[Number 33]: It's been that long or longer.
 "Mr. Alverson: Were you acquainted with any of his family or anything?
"[Number 33]: No.
 "Mr. Alverson: Just knew that he resided there in your neighborhood?
"[Number 33]: Yes." R. 65-66 (emphasis added).
The prosecutor's reason for striking Number 33 was her acquaintance with Mr. Tompkins and her possible bias stemming from extradition proceedings against him. However, Number 33's answers on voir dire clearly indicate that she knew Mr. *Page 1294 
Tompkins only minimally and that her acquaintanceship with him occurred a number of years previous to this trial. Furthermore, Mr. Tompkins had no relation or connection to the prosecution of the appellant.
The prosecutor did not base his strike of Number 33 on facts previously known to him or information received from another source, nor did he refute Number 33's answers on voir dire with personal knowledge or information acquired elsewhere. CompareMcLeod v. State, 581 So.2d at 1154-55 (on the basis of personal knowledge, prosecutor refuted veniremember's assertion that he had previously served on a jury which returned a guilty verdict in a cocaine case). The prosecutor specifically based his strike of Number 33 on his voir dire examination of her and that examination simply does not support the reason given for the strike. In this case, the answers by the veniremember do not support the reason given by the prosecutor. Furthermore, the prosecutor never questioned this veniremember about any potential bias, but based his strike on an apparently unfounded assumption. Cf. Ex parte Branch, 526 So.2d at 624 (noting that a "lack of questioning to the challenged juror, or a lack or meaningful questions" can be used to show that the prosecutor's stated reason for a strike is merely a "sham or pretext").
The prosecutor stated that he struck Number 17 because "her place of employment is Wayne Poultry Company in Decatur and our office has prosecuted a number of people employed there, and in fact, arrested a lot of people on bad check charges. My investigator has been involved in that and due to that, she might not be a fair and impartial juror." R. 72.[2] The prosecutor did not assert that Number 17 had been prosecuted for bad check charges, compare Bryant v. State, 516 So.2d 938, 941
(Ala.Cr.App. 1987) (in prosecution for possession of forged instrument, fact that veniremember "had written bad checks in the past" was race-neutral reason for striking that veniremember), nor did he state that she was related to or was close friends with any of the persons who had been charged. Although the prosecutor asked if anyone on the venire "has a friend or relative or knows anyone that has ever been charged or accused of any type of sexual assault," R. 17, the record discloses no individual voir dire of Number 17 regarding the matter of the bad checks.
In Ex parte Bird and Warner, the prosecutrix stated that she struck a veniremember because the veniremember had the same last name as someone the prosecutrix had previously prosecuted and the prosecutrix thought they might be related. In holding this particular explanation insufficient, the Alabama Supreme Court stated: "[T]he failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination. Thus, if the prosecutrix thinks that a veniremember may be related to a former defendant, she must ask the veniremember." 594 So.2d at 683 (citations omitted). This same rationale applies in this case. Here, as in Bird andWarner, "a simple question directed to the veniremember could have dispelled any doubt about a possible relationship" with one or more of the defendants in the bad check cases. Id.
The trial court's decision with regard to a Batson motion is to be reversed only if that decision is clearly erroneous.Branch, 526 So.2d at 625. Because two of the reasons volunteered by the prosecutor were not sufficiently race-neutral under the principles of Batson, Branch, and Birdand Warner, the trial court's finding that they were race-neutral was clearly erroneous. The State's use of peremptory strikes to eliminate even one veniremember for a reason that is not race-neutral necessitates a reversal of the defendant's conviction. See Parker v. State, 568 So.2d 335, 338
(Ala.Cr.App. 1990). Accordingly, the appellant's *Page 1295 
convictions must be reversed and this cause remanded to the circuit court for further proceedings not inconsistent with this opinion.
 II
Although a number of other issues are raised in this appeal, we address only the two that are likely to arise in the event of a retrial.
The victim was abducted and raped by a masked assailant. Some two months after the rape, an investigating officer played for the victim a tape-recorded statement given by the appellant. Contemporaneously with playing this taped statement, the officer informed the victim that the tape was a recording of "a suspect." After hearing the tape, the victim identified the voice of the appellant as the voice of her assailant. No tapes of other persons were ever played for the victim.
As the appellant contends, the circumstances under which the victim's voice identification was made were impermissibly suggestive. Commonwealth v. Vanderlin, 398 Pa. Super. 21, 30,580 A.2d 820, 825 (1990) (identification procedure "impermissibly suggestive" where rape victim was played tape recording of only one voice, after which she identified that voice as that of her attacker). See also Palmer v. Peyton,359 F.2d 199, 200-01 (4th Cir. 1966) (where rape victim was told that the "police had a suspect" and then was asked to stand outside room in which defendant was located while defendant repeated certain phrases used by the rapist, identification was "highly suggestive"); State v. Johnson, 207 Mont. 214,674 P.2d 1077 (1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2693,81 L.Ed.2d 365 (1984) (identification procedure suggestive where rape victim was told that police had a suspect and then was asked to stand near door of room in which defendant was talking with deputies); State v. Woodall, 385 S.E.2d 253, 262 (W.Va. 1989) (where rape victim listened while defendant answered polygraph questions at police headquarters, the identification was "suggestive").
However, suggestiveness alone does not require the suppression of a voice identification. Brown v. Harris,666 F.2d 782, 786 (2d Cir. 1981), cert. denied, 456 U.S. 948,102 S.Ct. 2017, 72 L.Ed.2d 472 (1982). It is only where the suggestiveness of the procedure renders the identification "so unreliable as to create a substantial likelihood of misidentification" that suppression is required. United Statesv. Tyler, 714 F.2d 664, 667 (6th Cir. 1983). If the identification is found to be "independently reliable," it is admissible. See Dickerson v. Fogg, 692 F.2d 238, 244 (2d Cir. 1982).
To determine whether a voice identification has an independent basis of reliability, the suggestiveness of the identification must be weighed against the factors set forth inNeil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382,34 L.Ed.2d 401 (1972). United States v. Flickinger, 573 F.2d 1349,1358 (9th Cir.), cert. denied, 439 U.S. 836, 99 S.Ct. 119,58 L.Ed.2d 132 (1978); Gaines v. State, 406 So.2d 523, 527
(Fla.App. 1981); State v. Coy, 234 Kan. 414, 417, 672 P.2d 599,602 (1983). The Neil v. Biggers factors, as reaffirmed inManson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253,53 L.Ed.2d 140 (1977), include "the opportunity of the witness to view [or hear] the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Each case must be decided upon its own facts, O'Brien v. Wainwright, 738 F.2d 1139, 1140 (11th Cir. 1984), cert. denied, 469 U.S. 1162, 105 S.Ct. 918,83 L.Ed.2d 931 (1985), based upon a consideration of the totality of the circumstances involved. Manson v. Brathwaite,432 U.S. at 110-13, 97 S.Ct. at 2251-52.
In view of the fact that this cause must be remanded for further proceedings for the reasons stated in Part I above, we decline to apply the Neil v. Biggers factors and perform the balancing analysis at this time. If the voice identification is to be used against the appellant in any further proceedings, that analysis should be performed *Page 1296 
by the trial court. We point out that where an identification is impermissibly suggestive, "the burden [is] on the prosecution to show that the . . . identification had an independent basis of reliability." Hull v. State,581 So.2d 1202, 1207 (Ala.Cr.App. 1990).
 III
Approximately two months after the rape, the appellant was interviewed by police officers who were investigating the offense. A portion of this interview was tape-recorded and that tape was introduced at trial through the testimony of Tuscumbia Police Lieutenant Allan Scogin. The appellant argues that this tape-recorded statement should not have been admitted because the State failed to lay the foundation required by Voudrie v.State, 387 So.2d 248, 256 (Ala.Cr.App.), cert. denied,387 So.2d 256 (Ala. 1980). Specifically, he asserts that the State failed to prove "that the recording ha[d] never been out of the possession of the person in charge of it." Appellant's brief at 29.
In Molina v. State, 533 So.2d 701, 709 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851
(1989), we noted that this Court had "required compliance with the seven-prong test set out in Voudrie v. State, 387 So.2d [at 256], for the admission of sound or film recordings." We then explicitly held that this seven-pronged test would not apply to the admission of video recordings. Molina, 533 So.2d at 712. In rejecting the application of the Voudrie seven-prong test to video recordings, we observed that "[t]he 'seven-prong test is now usually considered obsolete, even for sound recordings,' [3 C. Scott, Photographic Evidence § 1297 at 98 n. 42.20 (2d ed. Supp. 1987)], and 'has been abandoned in the better reasoned cases in favor of a rule holding that sound tapes, like photographs, are admissible when a witness testifies they are reliable representations of the subject sound,' id. at 97 n. 42.5." Molina, 533 So.2d at 712.
In Ross v. State, 555 So.2d 1179 (Ala.Cr.App. 1989), we implicitly departed from the seven-prong test for the admission of sound recordings. There, we quoted the Molina language that "tapes 'are admissible when a witness testifies they are a reliable representation of the subject sound,' " Ross,555 So.2d at 1182, and concluded that the sound recordings in question were admissible because three witnesses "testified that the audio tapes accurately represented the conversations between [the government's cooperative] and this appellant,"Ross, 555 So.2d at 1182. See also Tolbert v. State,552 So.2d 164, 169 (Ala.Cr.App. 1989) (Bowen, J., concurring specially) (where the accuracy of a sound recording is demonstrated, "the need to establish a chain of custody" for the recording is obviated). We now expressly hold that compliance with Voudrie is no longer required for the admission of sound recordings where the accuracy and reliability of the sound recordings can be demonstrated by a witness.
In the case at bar, Lieutenant Scogin testified that he had listened to the recording prior to trial. When asked by the prosecutor if the recording was "a fair and accurate reproduction of that conversation that [he] had [with the appellant on March 7]," Scogin answered affirmatively. R. 130. Because the accuracy and reliability of the sound recording was clearly demonstrated by a participant in the conversation who positively identified the appellant as the other participant, we hold that it was not necessary for the State to establish a chain of custody for the recording.
At a bench conference out of the hearing of the jury, the prosecutor offered a typewritten transcript of the tape-recorded statement "as an aid to the jury in case any parts of the tape are inaudible or hard to hear," and stated that the transcript would not be sent "back to the jury room or anything like that." R. 132. The trial court excused the jury for lunch, then entertained argument on the matter. It was agreed that the appellant's request to "quit talking" would be deleted from the end of the transcript and that that portion of the tape would not be played for the jury. R. 134-35. *Page 1297 
During the discussion out of the presence of the jury, Lieutenant Scogin testified that he had read the transcript and that it was "an accurate and correct transcription of what is on the tape." R. 139. He also reiterated that the tape was "a fair and accurate recording of what was said there in [his] office on March 7, 1990." R. 140. Additionally, the trial court listened to the tape and compared it to the transcript, stating: "Let the record show I have listened to the tape and compared it to the transcript and the transcript seems to be the same as the tape when I listened to it." R. 144. The trial court then stated that it would permit the use of the transcript on the basis proposed by the prosecutor. R. 144-45. At defense counsel's request, the transcript was formally admitted as Court's Exhibit 1, R. 134, and is a part of the record before this Court. CR 528.
The appellant contends that the admission of the transcript of the tape-recorded statement violated the best evidence rule. At the outset, we note that "[a]lthough it is sometimes said loosely that a party must produce the best evidence which the nature of the question admits, there is no rule of law that is so all-encompassing." C. Gamble, McElroy's Alabama Evidence § 212.01 (4th ed. 1991). Moreover, we have held that a typewritten transcript is admissible if its "accuracy and reliability is clearly established," even where the transcript "has been objected to as in violation of the best evidence rule." Clark v. State, 562 So.2d 620, 624 (Ala.Cr.App. 1989);Hawkins v. State, 443 So.2d 1312, 1315 (Ala.Cr.App. 1983). Where the tape-recorded statement or conversation is missing or unavailable, "[a] typewritten transcript of [the recording] is admissible where the officer who listened to the conversation at the time of the recording testifies that the transcript accurately reflect[s] the conversation." Hawkins,443 So.2d at 1314-15. We have also permitted the admission of a transcript where the tape recording was inaudible in places. Thornton v.State, 570 So.2d 762 (Ala.Cr.App. 1990); Hill v. State,516 So.2d 876 (Ala.Cr.App. 1987); Dawkins v. State, 455 So.2d 220
(Ala.Cr.App. 1984).
Although the tape recording in the present case was neither unavailable nor inaudible,[3] we see no reason why a different rule should apply. Lieutenant Scogin was in a position to establish the reliability and accuracy of the transcript, seeGwin v. State, 425 So.2d 500, 505 (Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983), and did so. Furthermore, the transcript was merely cumulative evidence, the admission of which rests within the discretion of the trial court. White v.State, 587 So.2d 1218, 1228 (Ala.Cr.App. 1990), affirmed,587 So.2d 1236 (Ala. 1991); Gainer v. State, 553 So.2d 673, 684
(Ala.Cr.App. 1989). Consequently, the transcript was properly admitted for the limited purposes advanced by the prosecution.
For the reasons stated in Part I above, the appellant's convictions are reversed and this cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] Prior to the decision in Powers v. Ohio, a prima facie showing of discrimination also required that a defendant establish (1) that he was "a member of a cognizable racial group" and (2) that the prosecutor had used his peremptory strikes to remove venirepersons of the same race. Batson, 476 U.S. at 96,106 S.Ct. at 1723. Powers obviously rendered these two requirements unnecessary. See United States v. Nichols, 937 F.2d 1257, 1262
(7th Cir. 1991); Pruett v. Thompson, 771 F. Supp. 1428,1440 n. 8 (E.D.Va. 1991).
[2] We note that this reason is similar one found suspect inBranch, 526 So.2d at 612 ("As an employee of Gold Kist, Maynor was not desirable as a juror because it is the prosecutors' general experience that Gold Kist's employees have not been attentive as jurors and a number of employees are being investigated for a variety of crimes.").
[3] We have listened to the tape in its entirety and have found no instances where the tape was inaudible.